JOURNAL ENTRY AND OPINION
{¶ 1} In this appeal, defendant-appellant Ru-El Sailor ("defendant") appeals from the judgment entered pursuant to a jury verdict finding him guilty of aggravated murder, complicity of aggravated murder, murder, complicity of murder, kidnapping, complicity of kidnapping, felonious assault, and complicity of felonious assault. Defendant was indicted along with co-defendants Cordell Hubbard and Nichole Hubbard. For the reasons that follow, we affirm the decision of the trial court.
 {¶ 2} At trial, the following facts were established: In the early morning hours of November 17, 2002, Clark Lamar and Omar Clark were involved in an altercation with the defendants, which ultimately led to the fatal shooting of Omar and the serious injury of Clark.
 {¶ 3} Prior to the shooting, Nichole Hubbard was spending the evening with Clark and Omar. Clark, Omar, and Nichole were riding in Nichole's car when Nichole gave Clark $20 so that he could purchase a "wet"[1] cigarette with the understanding that he was to pay her back in full. The three of them smoked the wet cigarette. When Nichole took Clark home later that night, she asked for the $20 back. Clark repaid Nichole only $10, arguing that because she had smoked the cigarette with him, she was entitled to only half of the money he borrowed to purchase it. Nichole became enraged and hysterical and telephoned her brother, Cordell, to tell him that she had been "played." She told Cordell that she was on Englewood Road, and then got in her car and left.
 {¶ 4} Shortly after receiving the phone call from Nichole, Cordell and defendant arrived at Englewood Road. Cordell and Clark got into an argument over the $20 allegedly owed to Nichole, and defendant pulled out a handgun and started shooting, killing Omar and injuring Clark.
 {¶ 5} Detective James Metzer of the Cleveland Police Department Homicide Division was assigned to the case and spoke with Clark shortly after the shooting to obtain descriptions of the individuals involved. He was told about the argument between Clark and Nichole, the wet cigarette, and her threat to call her brother. Detective Metzler located Nichole and she gave him a statement. She admitted that she had fought with Clark over $20.00 and she had called her brother once, but his voice mail picked up and she did not speak to him. She also told the detective that Clark had pulled a gun on her.
 {¶ 6} One month after the shooting, Clark identified Cordell from a photo array as the man he had argued with. Several months later, he identified defendant from a photo array as the shooter.
 {¶ 7} On March 26, 2003, defendant was indicted for one count of aggravated murder in violation of R.C. 2903.01; one count of complicity in the commission of aggravated murder in violation of R.C. 2903.01 and R.C. 2923.03; one count of murder in violation of R.C. 2903.02; one count of complicity to commit murder in violation of R.C. 2903.02 and R.C. 2923.03; two counts of kidnapping in violation of R.C. 2905.01; two counts of complicity in the commission of kidnapping in violation of R.C. 2905.01 and R.C. 2923.03; two counts of felonious assault in violation of R.C. 2903.11; two counts of complicity in the commission of felonious assault in violation of R.C. 2903.11 and R.C. 2923.03; and one count of having a weapon while under disability. Cordell and Nichole were also indicted for their conduct arising out of these events.
 {¶ 8} On May 19, 2003, the court heard a motion to suppress. The testimony was as follows: Larry Braxton made a statement to the police on December 4, 2002. He was not sure if he made an identification of the shooter at that time but several months later he was shown another photo array from which he identified defendant as the shooter. Detective Henry Veverka of the Cleveland Police Department met with Larry on December 4, 2002. Larry was unable to identify Cordell from a photo lineup as the shooter. He showed another photo array to Larry in March 2003; and, at that time he immediately identified defendant as the shooter. Two other witnesses, Brandon Gibbs and Joseph Mayhand, were unable to make identifications. Finally, Clark made a statement and gave a description of the men to the police immediately following the shooting and shortly thereafter was able to identify Cordell from a photo array as the man he was arguing with.
 {¶ 9} On May 19, 2003, a jury trial began and the following testimony was given: The State first called Clark Lamar. On the evening of November 16, 2002, he was in the company of Nichole, Omar, Maria Whitlow, and Ellen Taylor, a.k.a. Puddin, playing cards and drinking beer. He, Omar, and Nichole left Puddin's house and smoked a wet cigarette which had been bought with $20 borrowed from Nichole. When he told her that he was going to repay her only $10, Nichole "flipped" out. She became hysterical and threatened to call her brother because "y'all got me fucked up." Nichole made a phone call and told the person on the line: "How we were trying to play her, and how we were sheisty and scandalous, and we got her fucked up and she ain't on it, and I heard her tell whoever she was talking to on the phone the name of the street and that was it." At the conclusion of the call, Nichole took the $10 and drove away.
 {¶ 10} Approximately three to four minutes after Nichole made the phone call, a car pulled up and two males jumped out of the car. The passenger, later identified as Cordell, started arguing with him and asking him "what the f____ you say to my sister." Cordell made a phone call and asked the person on the line: "Nichole, what he got on? A blue Nautica jacket?"
 {¶ 11} While he was arguing with Cordell, he noticed that the driver of the car had a gun and was arguing with Omar. Upon seeing the weapon, he turned and ran. As he did so, he heard numerous shots fired, and felt a bullet graze his right buttock.
 {¶ 12} Approximately one month after the shooting, he identified Cordell from a photo array as the passenger and the person he had been arguing with on the night of the shooting. Several months after the shooting, he identified defendant, Ru-el Sailor, from a photo array as the driver of the car and the person who killed Omar on the night of the shooting. He indicated that he recognized defendant as he testified at the suppression hearing and saw him seated at the trial table.
 {¶ 13} The State then called Ellen Taylor "Puddin." She stated the following: Clark, Omar, and Nichole were at her house on the evening of November 16, 2002, but left to get some drugs. She called Nichole and heard people arguing in the background. Nichole was crying, kept hanging up on her, and told her that "I am going to call you back these Niggas got to be fucked up. These Niggas got to be fucked up." She was concerned for Nichole and kept trying to call her; but, Nichole kept hanging up on her. Nichole told her she was going to call her brother and, a moment later, Nichole told her that she was on the other line with her brother and he was arguing with the boys.
 {¶ 14} Tenitta Johnson lives on Englewood. She called the police in the early morning hours of November 17, 2002, after observing a group of young men arguing about a girl in the street near her house. She got a good look at the men and identified Cordell as one of them.
 {¶ 15} Brandon Gibbs was on Englewood on the night of the shooting and saw Clark and Omar arguing with two men he did not know. He overheard one of the men say to Clark, "you can't talk to my sister like that" and "my sister said you did. I'm about to call her right now. If she says you did it, you outta here."
 {¶ 16} Kristen Clark of Verizon Wireless and Brett Trimble of Sprint Communications Company both testified that six or seven calls occurred between Cordell and Nichole's cell phones between 11:57 p.m. on November 16, 2002 and 12:47 a.m. on November 17, 2002 and that none of the calls went to voice mail.
 {¶ 17} Larry Braxton lives on Englewood. He was with Brandon Gibbs on the evening of the shooting and saw a group of young men arguing in the street. He heard one of the men say to Clark, "if he called his sister, his ass was out" and "you are outta here." He began walking toward the crowd but reversed his direction after seeing that one of the men had a gun. He identified the defendant as the person with the gun and identified Cordell as being at the scene.
 {¶ 18} Joseph Mayhand lives on Englewood. He saw a group of young men arguing in the street and heard one of the men say to Clark, "I'm gonna call my sister and if she says this is you, then your ass is out." He also saw another man holding a gun.
 {¶ 19} Finally, Detective James Metzler of the Cleveland Police Department testified that he was assigned to investigate the murder of Omar. Clark told him that he got into a fight with Nichole over drug money and that she called her brother to "f____ them up." Nichole gave a statement to the police in which she stated she only called her brother once but did not talk to him. His review of the cellular phone records demonstrated that there were actually seven calls between Nichole and Cordell between 11:57 a.m. and 12:46 p.m.
 {¶ 20} Defendant testified on his own behalf and stated the following: He was with Cordell at the Benjamin Bar on the evening of the shooting until around 12:40 a.m. and they were together the entire time inside the bar. He left the Benjamin Bar with Cordell and they drove to another bar 4U2B. They left 4U2B around 2:00 a.m. and drove to a party at St. Aloysius, where they stayed for about 40 minutes. He was with Cordell the entire evening until he dropped him off at his house around 4:00 a.m. Defendant denied shooting Omar Clark or being present when Clark Lamar was shot.
 {¶ 21} On June 5, 2003, the jury returned guilty verdicts on all counts, except for having a weapon while under disability. On July 24, 2003, defendant was sentenced to 28 years to life. At the sentencing hearing, Cordell, who had not testified at trial, told the court that he was with a man named Will on the night of the shooting and that defendant was not there. (Tr. 1815, 1816).
 {¶ 22} On September 4, 2003, a hearing was held on defendant's motion for a new trial. At this hearing, Cordell testified that he shot Omar in self-defense and that defendant had nothing to do with the incident. Cordell indicated that another person, William Sizemore, was with him that evening. This motion was denied by the trial court.
 {¶ 23} This appeal timely followed.
 {¶ 24} "I. Defendant was denied due process of law when he was not granted a separate trial."
 {¶ 25} In his first assignment of error, defendant contends that he was denied a fair trial when the trial court denied the motion for separate trials. Specifically, defendant claims that he was denied his right of confrontation when the State introduced a police statement made by Nichole Hubbard, who did not testify at trial. In support of his position, defendant cites to Bruton v. United States, 391 U.S. 123, 137 (1968);Richardson v. Marsh, 481 U.S. 200, 208 (1987); Gray v.Maryland, 523 U.S. 185 (1998); and Crawford v. Washington,124 S.Ct. 1354 (2004), for the proposition that a defendant is entitled to a separate trial where the statement of a co-defendant is offered at trial, which implicates the defendant. Defendant's reliance on these cases is misplaced inasmuch as the statement made by Nichole, and read into evidence by Detective James Metzler, does not implicate defendant in the shooting of Omar Clark and Clark Lamar. Indeed, a review of the statement indicates that Nichole never even mentions defendant's name. (Tr. 1235-1245). Since Nichole was not a "witness against" the defendant and in no way implicated him in the shootings, defendant's right to confrontation under the Sixth Amendment was not violated by the admission of Nichole's statement. Accordingly, the trial court did not err when it denied the motion for separate trials.
 {¶ 26} Assignment of Error I is overruled.
 {¶ 27} "II. Defendant was denied due process of law when the court overruled the identification made by Clark Lamar Williams."
 {¶ 28} In his second assignment of error, defendant argues that he was denied due process when the trial court allowed Clark Lamar to identify him during Cordell's suppression hearing. Clark had been unable to identify the defendant out of a photo lineup immediately following the shooting, but did pick out Cordell. While testifying at Cordell's suppression hearing, Clark saw defendant sitting at the table next to Cordell and identified him to the detective as the person who had done the shooting. Defendant argues that this identification was impermissibly suggestive because he was the only other black male in the courtroom and was sitting at the trial table when Clark claims he recognized him.
 {¶ 29} A court is not required to suppress an identification of a suspect unless the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances. In re Henderson,
Cuyahoga App. No. 79716, 2002-Ohio-483. Indeed, even if the pretrial identification procedure was impermissibly suggestive, an in-court identification is permissible if the State establishes by clear and convincing evidence that the witness had a reliable, independent basis for the identification based on prior independent observations made at the scene of the crime.State v. Tate, Cuyahoga App. 81577, 2003-Ohio-1835, citing Inre Henderson, Cuyahoga App. No. 79716, 2002-Ohio-483. No due process violation will be found where an identification does not stem from an impermissibly suggestive confrontation but is instead the result of observations at the time of the crime. Id. In determining whether an identification is reliable, a court must consider (1) the witness's opportunity to view the suspect at the time of the incident, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description, (4) the witness's certainty when identifying the suspect at the time of the confrontation, and (5) the length of time elapsed between the crime and the identification. State v. Waddy
(1992), 63 Ohio St.3d 424, 439.
 {¶ 30} Applying these factors to the case at hand, we note the following: First, Clark testified that he was face-to-face with a man standing outside of a car with a gun. He testified that he got a good look at the man's face and build. He testified that before he ran away he saw the man with the gun speaking with Omar Clark. Next, the description given by Clark to the detectives was similar to the defendant's appearance. Finally, although Clark was unable to make a positive identification of the defendant from a photo array immediately following the shooting, he was able to identify him from a photo array several months later, and, immediately after seeing the defendant in the courtroom, Clark spoke to a detective and pointed him out as the shooter. Although this identification was made nearly seven months after the crime had been committed, Clark was certain in his identification, had ample opportunity to observe the defendant at the crime, and had given a good description of defendant to the police shortly after the crime had been committed. Although the manner of identification may not have been ideal, it is clear that Clark had a reliable, independent basis for the identification based on his prior independent observations made at the scene of the crime. Ibid. Accordingly, the trial court did not err in refusing to suppress Clark's in-court identification.
 {¶ 31} Assignment of Error II is overruled.
 {¶ 32} "III. Defendant was denied a fair trial where the prosecutor brought before the jury that defendant possessed an unrelated gun."
 {¶ 33} In his third assignment of error, defendant argues that he was denied a fair trial because the State raised allegations of other bad acts when it referred to his possession of guns on prior occasions, in violation of Evid.R. 404(B).
 {¶ 34} The record demonstrates that the prosecutor made three references to defendant's possession of a gun on prior occasions. Defendant's attorney objected to the prosecutor's remarks on two occasions, and the trial court sustained these objections and later gave an appropriate instruction on the use of sustained evidence. Although the prosecutor may have overstepped the bounds of appropriate cross-examination by continuing the line of questioning regarding the gun possession after the trial court sustained defense counsel's first objection, we do not find this error violated defendant's right to a fair trial. Where the trial court has sustained an objection and provided a curative instruction to the jury, we must presume the jury followed the trial court's instruction. State v. Garner (1995),74 Ohio St.3d 49, 59.
 {¶ 35} Assignment of Error III is overruled.
 {¶ 36} "IV. Defendant was denied due process of law and a fair trial by reason of improper cross-examination of defendant."
 {¶ 37} In his fourth assignment of error, defendant argues that he was unfairly prejudiced when the State improperly cross-examined him with regard to his license suspension, selling drugs, carrying a gun, drug money, and support of his children.
 {¶ 38} Generally, cross-examination is permitted on all relevant matters and matters affecting credibility. State v.Slagle (1992), 65 Ohio St.3d 597, 605, quoting Evid.R. 611(B). The scope of cross-examination lies within the sound discretion of the trial court in relation to the particular facts of the case. Id. Furthermore, prosecutors are entitled to a certain degree of latitude as to what the evidence has shown and what inferences can reasonably be drawn from the evidence. State v.Smith (1997), 80 Ohio St.3d 89.
 {¶ 39} Here, we cannot say that the prosecutor's questions on cross-examination were improper. The prosecutor questioned the defendant regarding his convictions for drug possession and drug trafficking. Evidence of criminal convictions may be used to impeach the credibility of a defendant. Evid.R. 609. The prosecutor questioned the defendant about driving while under suspension only after the defendant stated that his license had previously been suspended. (Tr. 1557-1558). With regard to the prosecutor's question and comment regarding defendant's support of his children and whether it was done with "drug money," the trial court sustained defense counsel's objection and promptly gave a curative instruction. (Tr. 1585). Finally, as noted in the previous assignment of error, the trial court sustained objections with regard to defendant's possession of a gun on prior occasions. Accordingly, after a review of the entire record, we do not find the cross-examination as a whole violated defendant's right to a fair trial.
 {¶ 40} Assignment of Error IV is overruled.
 {¶ 41} "V. Defendant was denied due process of law when he was not granted a new trial where defendant established his actual innocence."
 {¶ 42} In his fifth assignment of error, defendant argues that his conviction is based on perjured testimony and that he is entitled to a new trial based on newly discovered evidence.
 {¶ 43} The decision whether to grant or deny a motion for new trial on the basis of newly discovered evidence is committed to the sound discretion of the trial court. State v. Matthews
(1998), 81 Ohio St.3d 375. An appellate court will not reverse a trial court's denial of a motion for new trial absent an abuse of that discretion. State v. Hawkins (1993), 66 Ohio St.3d 339,350. An abuse of discretion is more than a mere error in judgment; it implies that a court's ruling is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 44} A defendant seeking a new trial based on the ground of newly discovered evidence bears the burden of demonstrating to the trial court that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence. State v. Petro
(1947), 148 Ohio St. 505; Hawkins, supra at 350.
 {¶ 45} Here, at the hearing on the motion for a new trial, Cordell testified that he shot the victim in self-defense and that the victim was armed. He stated that defendant was not present at the time of the shooting, did not have anything to do with the shooting, and did not have any knowledge of what happened. Rather, Cordell testified that another person, William Sizemore, was with him on the night of the shooting.
 {¶ 46} Defendant claims that Cordell's testimony is evidence that he is actually innocent of the offenses for which he has been convicted. He states that Cordell's testimony demonstrates that Cordell is the one responsible for Omar Clark's death and that his conviction is based on perjured testimony.
 {¶ 47} We are not persuaded that defendant's "newly discovered evidence" would have affected his trial result. Cordell's testimony does not meet the last requirement underPetro. Cordell's testimony, that he was with another person at the time of the crime, clearly contradicts and impeaches the testimony given by defendant at trial that he was with Cordell the entire evening and night that the murder took place. (Tr. 1572). His testimony, therefore, fails to exculpate the defendant. Accordingly, the trial court did not abuse its discretion in denying defendant's motion for a new trial. See Ibid; State v. Smith (May 10, 2001), Cuyahoga App. No. 78229;Holden v. Ohio Bureau of Motor Vehicles (1990),67 Ohio App.3d 531.
 {¶ 48} Assignment of Error V is overruled.
 {¶ 49} "VI. Defendant was denied due process of law when the court singled out the testimony of defendant for special consideration."
 {¶ 50} In his sixth assignment of error, defendant argues that he was unfairly prejudiced when the trial court instructed the jury that, in evaluating his testimony, it should consider that he had an interest in the outcome of the trial. The jury instruction given by the trial court with regard to defendant's testimony is as follows:
 {¶ 51} "The defendant testified as a witness in this case, and you will weigh his testimony in the same manner as you weigh the testimony of other witnesses who appeared in the case. Just because he is the defendant is no reason for you to disregard and set aside his testimony. You will give his testimony the weight it is entitled to receive taking into consideration his interest in the outcome of the case and applying to his testimony the same rules that you apply to the testimony of all other witnesses who appeared in this case. It is for you to determine what weight that you will give to the testimony of any witness who appeared in this case." (Tr. 1749-1750).
 {¶ 52} In State v. Perkins (1994), 93 Ohio App.3d 672;State v. McRae (1965), 4 Ohio App.2d 217; State v. Smith
(Aug. 21, 1997), Cuyahoga App. No. 70855; State v. Valentine
(July 17, 1997), Cuyahoga App. No. 71301, this Court approved similar jury instructions. Accordingly, we conclude that the court's instructions did not deny defendant due process of law.
 {¶ 53} Assignment of Error VI is overruled.
 {¶ 54} "VII. Defendant was denied due process of law when the court allowed the jury to convict defendant of aggravated murder and the lesser offense of murder."
 {¶ 55} In this assignment of error, defendant argues that he cannot be convicted of both aggravated murder and murder.
 {¶ 56} Murder is a lesser included offense of aggravated murder. State v. Reed (1981), 65 Ohio St.2d 117. A defendant can be convicted of both murder and aggravated murder but can receive only one sentence if the offenses are allied. State v.Huertas (1990), 51 Ohio St.3d 22, 28. Since the record demonstrates that the trial court merged these counts for purposes of sentencing, we overrule this assignment of error.
 {¶ 57} "VIII. Defendant was denied due process of law when he was convicted of complicity under indictments which failed to charge an offense."
 {¶ 58} In his eighth assignment of error, defendant argues that his indictments for complicity were legally insufficient because they failed to allege or identify a principal offender.
 {¶ 59} Defendant was indicted under R.C. 2929.03(F), which provides in pertinent part that "whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were the principal offender. A charge of complicity may be stated in terms of this section or in terms of the principal offense."
 {¶ 60} R.C. 2929.03(F) does not require the State to name the principal offender or to specify what the accused's role was in the crime. State v. Drake (Oct. 28, 1993), Cuyahoga App. Nos. 63964 and 63965, citing State v. Wilson (1975),29 Ohio St.2d 203 and State v. Lawrinson (1990), 49 Ohio St.3d 238. Rather, the State need prove only that a principal committed the offense and that the accused aided or abetted in the commission of the offense. State v. Perryman (1976), 49 Ohio St.2d 14.
 {¶ 61} By virtue of R.C. 2923.03(F), defendant was on notice that evidence could be presented that he was either a principal offender, or an aider and abettor. State v. Dotson (1987),35 Ohio App.3d 135, 138. Accordingly, defendant was not prejudiced by a lack of specificity concerning whether or not he was considered the principal offender in the crime. State v. Drake,
supra; State v. Barnecut (1988), 44 Ohio App.3d 149; State v.Webb (1992), 72 Ohio App.3d 749.
 {¶ 62} Assignment of Error VIII is overruled.
 {¶ 63} "IX. Defendant was denied due process of law when the court allowed defendant to be convicted of an intervening act of a third person."
 {¶ 64} Defendant's argument with respect to this assignment of error is unclear, since he was not convicted of an intervening act of a third person. Although he cites from case law, he fails to apply this law or provide any argument directly relating to this issue. This Court may disregard an assignment of error presented for review if the party raising it fails to argue the assignment. See App.R. 12(A)(2).
 {¶ 65} In addition, although not specifically denoted as such in his assignment of error, defendant appears to be objecting to the trial court's jury instruction on the definition of "cause." However, the objected-to language is directly from Ohio Jury Instructions and does not alter or amend the original indictment or statute.
 {¶ 66} Assignment of Error IX is overruled.
 {¶ 67} "X. Defendant was denied due process of law when he was allowed to be convicted of aiding and abetting another aider and abettor."
 {¶ 68} In this assignment of error, defendant argues that the trial court's jury instruction on aiding and abetting was erroneous because it did not require the jury to find the identity of a principal offender.
 {¶ 69} In order to convict an offender of complicity, the State need not establish the principal's identity; pursuant to R.C. 2923.03(C), the State need only prove that a principal committed the offense. State v. Perryman, supra; State v.Hill (1994), 70 Ohio St.3d 25.
 {¶ 70} Here, the State presented evidence that Clark Lamar was shot and Omar Clark was killed by either defendant or Cordell. Thus, the State's evidence established the existence of a principal who committed the offense, which caused Omar's death and Clark's injury. Because the law does not require the State to prove the identity of that principal, or which defendant actually pulled the trigger, the court committed no error in its instruction. State v. Jones, Cuyahoga App. No. 80737, 2002-Ohio-6045.
 {¶ 71} Assignment of Error X is overruled.
 {¶ 72} "XI. Defendant was denied due process of law when the court overruled his motion for judgment of acquittal."
 {¶ 73} In this assignment of error, defendant argues that the State failed to present sufficient evidence to support his convictions and that his convictions are against the manifest weight of the evidence. We disagree.
 1. Sufficiency {¶ 74} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." To determine whether the evidence before a trial court was sufficient to sustain a conviction, an appellate court must view that evidence in a light most favorable to the State. State v.Dennis (1997), 79 Ohio St.3d 421, 430.
 {¶ 75} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Thompkins (1997), 78 Ohio St.3d 380,386.
 {¶ 76} Defendant argues that his convictions were not supported by sufficient evidence because there was no physical evidence that he shot or aided and abetted Cordell in the shooting of Omar Clark. The State argued that defendant either shot Omar or acted in complicity with Cordell in the shooting of Omar. R.C. 2923.03 prohibits complicity with others to commit crimes and provides as follows:
 {¶ 77} "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 {¶ 78} "* * *
 {¶ 79} "(2) Aid or Abet another in the committing the offense:
 {¶ 80} "* * *
 {¶ 81} "(F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were the principal offender. A charge of complicity may be stated in terms of this section, or in the terms of the principal offense."
 {¶ 82} R.C. 2903.02, in turn, defines the crime of murder and provides in pertinent part as follows:
 {¶ 83} "(A) No person shall purposely cause the death of another."
 {¶ 84} When viewed in the light most favorable to the State, the record contains sufficient evidence that defendant shot or aided and abetted Cordell in committing the murder and the trial court properly denied his motion for acquittal.
 {¶ 85} A person aids and abets another when he supports, assists, encourages, cooperates with, advises, or incites the principal in the commission of the crime, and shares the criminal intent of the principal. State v. Johnson (2001),93 Ohio St.3d 240, 245-246. Such intent may be inferred from the circumstances surrounding the crime. Id.
 {¶ 86} Here, Clark Williams was unable to identify the defendant in a photo line-up immediately following the shooting, although he was able to identify Cordell as the man he argued with about Nichole. However, several months later, at a photo array and at the suppression hearing, he was able to identify the defendant as the person holding the gun on the evening of the shooting. During the trial, he testified that he got into a fight with Cordell about Nichole and that he turned and ran when he saw the defendant holding a gun. Larry Braxton, a witness to the shooting, gave a suspect description to the police shortly after the incident and made a positive identification of Cordell. Several months later, he identified defendant from a photo line-up as the man he saw holding the gun. Defendant testified that he was with Cordell at several bars and clubs on the night of the shooting. He testified that they were together the entire evening.
 {¶ 87} When this evidence is viewed in the light most favorable to the State, the court could find that defendant accompanied Cordell to the scene of the shooting and was present during the argument that resulted in the death of Omar. The court could also find that defendant was holding the gun and either shot Omar or acted in complicity with Cordell in his shooting. Accordingly, this Court concludes that any rational trier of fact could have found the essential elements of complicity to murder proven beyond a reasonable doubt. Defendant's arguments to the contrary must fail.
 {¶ 88} Defendant also argues that it was inconsistent for the jury to find that he possessed a firearm, but not to find him guilty of the charge of having a weapon while under disability. In criminal cases, consistency between verdicts on several counts of an indictment is unnecessary where the defendant is convicted on one or some counts, and acquitted on others, and the conviction will generally be upheld, irrespective of its rational incompatibility with the acquittal. State v. Woodson (1985),24 Ohio App.3d 143. Accordingly, any inconsistency between verdicts on a count in an indictment charging defendant with having a weapon while under disability and a firearm specification within the same count will not be grounds for reversal. See State v.Smith (Nov. 6, 1997), Cuyahoga App. Nos. 69799, 70451, 71643;State v. Boyd (Jan. 12, 1995), Cuyahoga App. No. 65883.
 i. Manifest Weight {¶ 89} While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion. State v.Thompkins, supra at 390. When a defendant asserts that his conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id. at 387.
 {¶ 90} Here, two witnesses, Clark Williams and Larry Braxton, identified defendant as the man holding the gun at the scene of the shooting. These same witnesses also identified Cordell as the man arguing with Clark Williams at the scene of the shooting. Defendant testified that he was with Cordell the entire evening. Under these circumstances, we conclude that the same facts that overcome a sufficiency of the evidence claim also overcome his manifest weight argument.
 {¶ 91} Upon careful review of the testimony and evidence presented at trial, we hold that the jury did not act contrary to the manifest weight of the evidence in finding defendant guilty of aggravated murder, murder, felonious assault, kidnapping, and complicity to commit these crimes. We find there to be substantial, competent, credible evidence upon which the jury could base its decision that defendant was present at the scene of the shooting and acted in complicity with Cordell in the shooting of Omar and Clark.
 {¶ 92} Assignment of Error XI is overruled.
 {¶ 93} "XII. Defendant was denied effective assistance of counsel."
 {¶ 94} In his twelfth assignment of error, defendant argues that his trial counsel was deficient in various respects and that he was denied his constitutional right to the effective assistance of counsel.
 {¶ 95} In order for this Court to reverse a conviction on the grounds of ineffective assistance of counsel, we must find that (1) counsel's performance was deficient and (2) that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. Strickland v. Washington (1984),466 U.S. 668, 687. Counsel's performance is deficient if it falls below an objective standard of reasonable representation. Statev. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Id. at paragraph three of the syllabus. Strategic or tactical decisions made by defense counsel which are well within the range of professionally reasonable judgment need not be analyzed by a reviewing court. Strickland, supra.
 {¶ 96} Defendant first argues that his trial counsel performed deficiently by failing to object when the prosecutor asked the defendant which pocket he kept his gun in. (Tr. 1631). We disagree. The record indicates that the trial court sustained two other objections from defense counsel with regard to this line of questioning. (See Assignment of Error III and IV). Since the jury was properly informed by the trial court that this testimony was inadmissible, the failure of defense counsel to object when the third reference was made was not prejudicial to the defendant. Thus, defendant was not rendered ineffective assistance of counsel. See Bradley, supra.
 {¶ 97} Next, defendant claims that he was prejudiced when his trial counsel failed to object to the jury instructions regarding lesser included offenses and aiding and abetting. We disagree. In the seventh assignment of error, we held that a defendant may properly be convicted of both aggravated murder and murder and that the trial court correctly instructed the jury. Thus, trial counsel was not ineffective in failing to object to the jury instructions with regard to lesser included offenses. In the tenth assignment of error, we held that two defendants may properly be convicted of aiding and abetting each other without naming the principal offender and that the trial court correctly instructed the jury. Thus, trial counsel was not ineffective in failing to object to the jury instructions with regard to aiding and abetting.
 {¶ 98} Assignment of Error XII is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Karpinski, J., and Gallagher, J., concur.
[1] A cigarette dipped in a solution containing PCP.