JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Monique Larkins ("Larkins"), appeals from the judgment entered following a bench trial finding her guilty of robbery. Larkins was indicted along with co-defendant, Latricia Shepard ("Shepard"). For the following reasons, we affirm the decision of the trial court.
 {¶ 2} At trial, the following facts were established: On the evening of October 30, 2004, Lachanda Hulittle ("Hulittle") was seriously injured after being involved in an altercation with Larkins and Shepard.
 {¶ 3} Prior to the altercation, Larkins was walking down Kinsman Road in Cleveland, Ohio with co-defendant Shepard and Raychanda Jackson ("Ray Ray"). The three women were standing in front of Gene's Beverage on Kinsman Road, beginning to cross the street, when an approaching car sped up and forced them to step back to the curb. Ray Ray threw a cheeto at the car. The car screeched to a halt and Hulittle got out of the car and began screaming at the three women for throwing things at her car. The three women laughed and Ray Ray told Hulittle that there was "No problem." Hulittle then got back into her car and drove down the street to the Shop Rite grocery store.
 {¶ 4} The three women continued walking down the street and went to the Shop Rite store as well. Hulittle was exiting the Shop Rite store as the three women arrived at the parking lot. Hulittle and Ray Ray got into another argument and Ray Ray punched Hulittle. Ray Ray and Hulittle fought for several minutes in the parking lot, in front of a crowd of approximately 15 to 20 people. Larkins threw several punches at Hulittle. Hulittle fell to the ground between two cars and Ray Ray jumped on top of her and continued to beat her. While she was lying on the ground, Shepard and Larkins kicked her. During the fight, Hulittle's phone was stolen. Hulittle eventually broke free and ran inside the store. When she came out, her purse had been stolen from her car.
 {¶ 5} Following the incident, the three women walked across the street and entered an apartment building where a friend of Larkins lived. Members of the Cleveland Police Department arrived shortly thereafter and arrested the three women.
 {¶ 6} On December 14, 2004, the Cuyahoga County Grand Jury indicted Larkins on one count of robbery in violation of R.C.2911.02.
 {¶ 7} On June 1, 2005, a bench trial began and the following testimony was given: The State first called Cleveland Police Officer Thomas Ross ("Officer Ross") who testified that he responded to the scene at around 8:20 p.m. and saw Hulittle visibly upset, angry, crying, with facial lacerations and blood on the left side of her face. An incident report was made but he was unable to locate the suspects. Approximately 40 minutes later, he was called back to the area by Sergeant Paul Styles ("Sgt. Styles") of the Cuyahoga Metropolitan Housing Authority regarding apprehended suspects. At this time, Officer Ross took Shepard, Larkins, and Ray Ray into custody. Officer Ross testified that none of the three women appeared to have any injuries. Ray Ray was later released after telling the officers that she was a juvenile.[1]
 {¶ 8} Next, Sgt. Styles testified that he responded to the scene and saw Hulittle with blood on her. He was informed that one of the women that attacked Hulittle was peeking out of a window across the street from the Shop Rite. Sgt. Styles tried to get into the apartment building but was unable to gain access. However, shortly thereafter, Shepard, Larkins, Ray Ray, and another woman walked out of the front door. Hulittle identified the three women and Sgt. Styles handcuffed them and placed them in the back of the cruiser, while they waited for the Cleveland police officers to arrive. Sgt. Styles testified that none of the three women appeared to have any injuries.
 {¶ 9} Next, Carole Hulittle, the mother of the victim, testified that she received a call that her daughter was getting "jumped" outside the Shop Rite. She testified that when she arrived at the scene, her daughter was crying, had blood all over her white shirt, and was missing clumps of hair. Mrs. Hulittle testified that she saw the suspects peeking out of the window of an apartment across the street from the Shop Rite.
 {¶ 10} Next, the victim Lachanda Hulittle testified. She testified that she passed by a group of young women as she was driving down Kinsman on October 30, 2004. She recalled that Ray Ray had burgundy hair and that Shepard was wearing a lime green outfit. She stated that one of the women threw something at her car and that she stopped to ask if there was a problem. After Ray Ray told her there was "No problem," Hulittle got back into her car and drove to the Shop Rite. She testified that as she was exiting the store, Ray Ray came up to her and punched her in the face. She attempted to fight back and was punched by Larkins as well. She tripped over a concrete barrier and fell to the ground. While on the ground, she saw Shepard kick her in the side and head. Specifically, she saw a "lime green foot" stomp her. She also felt a hand take her cell phone from her pocket.
 {¶ 11} Finally, Detective Calvin Barrow ("Det. Barrow") of the Cleveland Police Department testified that Larkins told him that as Hulittle was being held on the ground, Ray Ray said "I ought to rob this bitch." Det. Barrow also testified that Shepard told him that she and Larkins tried to stop the fight.
 {¶ 12} For the defense, Larkins testified in her own behalf. She admitted that she was at the scene and that Ray Ray threw the first punch at Hulittle. She also confirmed that Ray Ray kicked Hulittle and said that she wanted to rob her. Larkins testified that she left the scene with Ray Ray and Shepard and went to an apartment across the street. She denied hitting, kicking, or stealing from Hulittle.
 {¶ 13} Finally, Shepard testified and confirmed her presence at the scene. She also denied kicking, hitting, or stealing from Hulittle. She stated that she was holding her 14-month-old baby during the fight and kept her distance in order to protect him.
 {¶ 14} On June 15, 2005, Larkins was found guilty of robbery, as charged in the indictment. Larkins was sentenced to community controlled sanctions. Larkins now appeals and raises the following four assignments of error for our review, which will be addressed together where appropriate.
 {¶ 15} "I. The court's decision finding the defendant guilty of aiding and abetting robbery was not supported by sufficient probative evidence when its decision was based on the defendant's mere association with the perpetrator.
 {¶ 16} "II. The court's decision finding the defendant guilty of aiding and abetting robbery was not supported by sufficient evidence and was against the manifest weight of the evidence when the victim did not see who took the property that was lost, and it was not established that anything was stolen or attempted to be stolen.
 {¶ 17} "III. The court's decision finding the defendant guilty of aiding and abetting robbery was not supported by sufficient evidence and was against the manifest weight of the evidence when there was no evidence that the defendant possessed the requisite mental state to be found guilty of robbery.
 {¶ 18} In these assignments of error, Larkins argues that the State failed to present sufficient evidence to support her conviction for robbery and that her conviction is against the manifest weight of the evidence because there is no evidence that she aided and abetted Ray Ray in the crime. Specifically, Larkins claims that she was merely a bystander and simply accompanied Ray Ray before and after the fight took place. Larkins also maintains that Hulittle could not identify who stole her cell phone or that it was actually stolen. Finally, Larkins claims that she had no intention to rob Hulittle of her belongings.
Sufficiency
 {¶ 19} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." To determine whether the evidence before a trial court was sufficient to sustain a conviction, an appellate court must view that evidence in a light most favorable to the State. State v.Dennis (1997), 79 Ohio St.3d 421, 430.
 {¶ 20} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Thompkins (1997), 78 Ohio St.3d 380,386.
 {¶ 21} Larkins was charged with robbery in violation of R.C.2911.02(A)(2). R.C. 2911.02(A)(2) defines the crime of robbery and provides in pertinent part that "no person, in attempting or committing a theft offense * * * shall * * * inflict, attempt to inflict, or threaten to inflict physical harm on another."
 {¶ 22} When viewed in the light most favorable to the State, the record contains sufficient evidence that Larkins inflicted physical harm upon Hulittle during the commission of a theft offense and the trial court properly denied her motion for acquittal.
 {¶ 23} Here, Larkins was with Ray Ray and Shepard when they first encountered Hulittle on the side of the street. Larkins accompanied Ray Ray and Shepard to the Shop Rite where Hulittle was attacked in the parking lot. Larkins threw several punches at Hulittle. Larkins heard Ray Ray declare her intention to rob Hulittle. While Hulittle was laying on the ground, Larkins kicked her in the side and head. After Hulittle ran inside the store, Larkins left the scene with Ray Ray and Shepard.
 {¶ 24} Larkins' contention that she did not possess the requisite mental state to be found guilty of robbery is simply not supported by the record. Criminal intent may be inferred from the presence, companionship and conduct before and after the offense is committed. State v. Pruett (1971),28 Ohio App.2d 29, 34; State v. Johnson (2001), 93 Ohio St.3d 240, 245-246. Here, the record clearly demonstrates that Larkins was not merely present at the scene. Rather, the testimony of the witnesses establishes that she supported, encouraged, and actively participated in the commission of the crime.
 {¶ 25} When this evidence is viewed in the light most favorable to the State, the court could find that Larkins inflicted physical harm on Hulittle while stealing her phone. While Hulittle could not specifically identify which woman stole her cell phone, pursuant to R.C. 2923.03(C), the State need not establish the principal's identity; rather, the State need only prove that a principal committed the offense. State v. Sailor,
Cuyahoga App. No. 83552, 2004-Ohio-5207. Here, the State presented evidence that Hulittle was beaten and robbed by three women. Hulittle did not identify anyone else involved in the attack. Accordingly, the State's evidence established the existence of a principal that committed the offense, which caused Hulittle's injury and loss. Although Larkins testified that she did not hit or kick Hulittle, the fact finder was free to accept or reject any or all of the testimony of the witnesses and assess the credibility of those witnesses. State v. DeHass (1967),10 Ohio St.2d 230. Accordingly, whether Larkins' testimony regarding her conduct was credible or not was for the trier of fact to determine.
 {¶ 26} Construing the testimony in a light most favorable to the State, as we are required to do, it is clear there was sufficient evidence which, if believed, demonstrated that Larkins engaged in the act of robbery as defined by 2911.02(A)(2). Accordingly, this Court concludes that any rational trier of fact could have found the essential elements of robbery proven beyond a reasonable doubt. Larkins' arguments to the contrary must fail.
Manifest Weight
 {¶ 27} While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion. State v.Thompkins, supra at 390. When a defendant asserts that her conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins, supra at 387.
 {¶ 28} Here, Hulittle identified Larkins as one of the women who attacked her on the evening of October 30, 2004. Specifically, she testified that Larkins punched her and kicked her in the side and head while she was lying on the ground. Hulittle was robbed of her phone during the altercation while Ray Ray was on top of her and Larkins and Shepard were kicking her. Athough the fact finder also heard Larkins testify that she did not hit or kick Hulittle, whether her testimony in this case was credible was for the trier of fact to determine. DeHaas, supra. Under these circumstances, we conclude that the same facts that overcome a sufficiency of the evidence claim also overcome her manifest weight argument.
 {¶ 29} Upon careful review of the testimony and evidence presented at trial, we hold that the court did not act contrary to the manifest weight of the evidence in finding Larkins guilty of robbery. We find substantial, competent, credible evidence upon which the court could base its decision that Larkins, while committing a theft offense, inflicted physical harm on Hulittle.
 {¶ 30} Assignment of Error I, II, and III are overruled.
 {¶ 31} "IV. The court erred to the prejudice of the defendant in violation of her due process rights when it failed to apply the correct law on aiding and abetting, but instead focused on the supposed existence of a `criminal confederacy,' which does not exist under the law of Ohio."
 {¶ 32} In the fourth assignment of error, Larkins argues that the trial court failed to apply the proper law when it found that she was part of a criminal confederacy.
 {¶ 33} The term "confederacy" is found in the definition of conspiracy. Specifically, Black's Law Dictionary defines conspiracy as "a combination or confederacy between two or more persons formed for the purposes of committing, by their joint efforts, some unlawful or criminal act."
 {¶ 34} R.C. 2923.01 prohibits conspiracy with others to commit crimes and provides as follows:
 {¶ 35} "(A) No person, with purpose to commit or to promote or faciliate the commission of * * * robbery * * * shall do either of the following:
 {¶ 36} "(1) With another person or persons, plan or aid in planning the commission of any of the specified offenses;
 {¶ 37} "(2) Agree with another person or persons that one or more of them will engage in conduct that facilitates the commission of any of the specified offenses."
 {¶ 38} Here, Larkins was not charged with a violation of R.C.2923.01. Rather, she was charged with, and found guilty of robbery, in violation of R.C. 2911.02(A)(2). However, we do not find that the trial court's use of the word "confederacy" warrants a reversal of Larkins' conviction. Indeed, it is quite clear that the trial court did not apply the law of conspiracy or aiding and abetting to the facts of this case. Rather, the court determined that Larkins was a principal player in the assault upon Hulittle and that she was directly involved in the robbery from start to finish. The trial court's use of the word "confederacy" did not invent a new criminal theory under which to find Larkins guilty. The trial court was merely placing a descriptive label on the conduct of the defendants that was more than simply aiding and abetting and different from conspiracy due to the lack of a previously agreed upon plan to rob the victim.
 {¶ 39} Assignment of Error IV is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Cooney, J., and Calabrese, Jr., J., Concur.
[1] It was later determined that Ray Ray was not a juvenile. She has still not been found.