JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Andre Lipscomb, appeals a judgment from the Cuyahoga County Court of Common Pleas finding him guilty of attempted murder, felonious assault, improper discharge of a firearm into a habitation, and having a weapon while under disability. The trial court imposed sentences totaling 15 years in prison. After reviewing the facts and the pertinent law, we affirm.
 {¶ 2} On February 1, 2006, the Cuyahoga County Grand Jury indicted appellant on one count each of attempted murder in violation of R.C.2923.03 and 2903.02; felonious assault in violation of R.C. 2903.11; improper discharge of a firearm at or into a habitation or school in violation of R.C. 2923.161; and, having a weapon while under a disability in violation of R.C. 2923.13. The first three counts carried one and three-year firearm specifications under R.C. 2941.141 and2941.145, and criminal gang specifications under R.C.2941.142. Appellant entered a plea of not guilty to the charges.
 {¶ 3} These charges arose as a result of a shooting incident on August 10, 2005 at approximately 9:30 PM near the intersection of East 61st Street and Francis Avenue in Cleveland. Numerous shots from different weapons were fired at a van driven by Carl Wallace as it passed through the intersection. The van was struck by at least two bullets, piercing the door on the driver's side and shooting out the window in the rear of the van, before crashing into another car and a utility pole. *Page 2 
Another bullet entered into the home of Christopher Dugan while he and his wife were putting their two children to bed. Fortunately, no one was seriously injured.
 {¶ 4} On October 30, 2006, appellant waived his right to trial by jury and stipulated to a prior drug conviction. The trial court bifurcated the criminal gang specifications, and set the matter to be heard at the conclusion of the trial if there were convictions on the first three counts of the indictment. The bench trial then commenced the following day during which the state presented testimony from six witnesses.
 {¶ 5} Detective James Raynard, working as a crime scene detective, testified to the location of the crashed van, to numerous shell casings found in the driveway in front of one address, to bullet holes found in the van and in the dining room window of a nearby residence, and to a spent bullet found in the street. The detective identified the shell casings and bullet fragments that had been collected at the scene including 9 mm "Aguila" brand shell casings, 9 mm "RP" brand shell casings, and two .45 caliber "PMC" brand shell casings.
 {¶ 6} Carl Wallace testified to driving down East 61st
Street after checking for vandalism at one of his rental properties located near East 61st Street. While driving, he heard a series of popping sounds he described as gunshots. He related that his van windows were shot out and that after ducking down to avoid being shot, he crashed into another car and a light pole while continuing to hear shots being fired. *Page 3 
 {¶ 7} Ronnie Tramble, who was 16 years old at the time of the shooting, then testified. He was one of the shooters involved in the incident. He said that he, along with a number of other young men including appellant, were hanging out at Darrell Burton's[1] house on East 61st Street on August 10, 2005, drinking and smoking marijuana. He identified some of the other men there that day as Verlondo Harper, Matthew Dupree, Demetrius Frazier, Desmond Wiley, and Mario Wiley.
 {¶ 8} Tramble told the court he had heard that one of Burton's female relatives had been stabbed in the face the day before and that Burton had retaliated by breaking in and smashing the windows at the attacker's house. Tramble said everyone at Burton's house on August 10, 2005 was drunk and high and they were all angry over the stabbing incident. He said there were four guns in the house at that time — a 9 mm Beretta, a .45 caliber handgun, a "3030," and a rifle that was missing a magazine.
 {¶ 9} Tramble testified that at one point someone came in and said that some "dudes" were coming in a van to get them. The group saw the van coming down the street and started shooting at it. Matthew Dupree fired first with the 9mm Beretta, and Tramble followed with the "3030." He testified that as he came around the house, appellant ran past him and fired the .45 caliber gun. He did not know how *Page 4 
many times appellant fired the gun, but said "a lot of bullets" were being shot. He also testified that he had entered into a plea agreement in which he agreed to testify truthfully in exchange for the possibility of a reduced sentence on his numerous pending cases.
 {¶ 10} Christopher Dugan testified to being home with his wife and children on that night. They were putting the children to bed when he heard gunshots and a bullet came through his front dining room window. He and his wife got the children down on the floor of the bedroom. He later found a spent bullet slug in the guest bedroom which he turned over to the police.
 {¶ 11} In his testimony, Cleveland police detective Woyma identified 2923 E. 61st Street, the house where the shell casings were found, as belonging to Darrell Burton, a member of the "Goonies" gang. He stated that to his knowledge and based upon his investigation, the Goonies were comprised of Ronnie Tramble, Andre Lipscomb, Martino Harris, Joshua Harris, Steve Arrington, Demetrius Frazier, Ladan Shandler, Darrell Burton, Mario Wiley, and others. Martino and Joshua Harris are appellant's brothers.
 {¶ 12} Woyma testified that after the shooting, and based upon information developed in another case, he obtained a search warrant for two residences. One of the residences was that of Sharonda Lipscomb, appellant's mother. During the search of the Lipscomb residence on East 65th Street, police recovered two single-stack magazines for a .45 caliber handgun which were loaded with nine rounds of *Page 5 
"PMC" brand shells. Also recovered was a box of 9 mm "Remington" brand ammunition, a box of .45 caliber "PMC" brand ammunition, and a box of "Aguila" brand 9 mm ammunition.
 {¶ 13} The state's final witness was appellant's brother, Martino Harris. He testified that he was at Darrell Burton's house at the time of the shooting incident on August 10, 2005 with a lot of other people. He did not know everyone's name but remembered that Matthew Dupree, Ronnie Tramble, Darrell Burton, and appellant were there. He also knew about the stabbing of Darrell Burton's cousin and said a guy came in and told them that the "dude" who did it was down the street. He said everybody got up and started running outside. He said he saw Tramble, Dupree, and Burton with weapons, but did not see anyone actually shooting. He said that when the shooting started, he ran away. He testified he did not see his brother with a gun that night.
 {¶ 14} The state was permitted to question Harris about the written statement he made to the police on January 6, 2006. In that statement, Harris was questioned about the shooting on August 10, 2005 and about the guns. He said that Tramble had the "3030," Dupree had the 9 mm, and appellant had a .45 caliber gun. During trial, Harris maintained that he said appellant had owned a .45 caliber gun and that he had seen him with it on another occasion, but that he did not see him with it on August 10, 2005. *Page 6 
 {¶ 15} After the close of the state's case, appellant made a Crim.R. 29 motion for acquittal. The trial court denied that motion and appellant rested. The trial court found that appellant was in complicity with other individuals who committed the crimes charged in the indictment, and convicted appellant on all four counts. The court then proceeded with the trial on the criminal gang specifications. The state's witness was unavailable and the trial court denied a motion for continuance, therefore the state rested without presenting any other evidence in support of these charges. The trial court did not find the charges proven beyond a reasonable doubt and acquitted appellant on the gang specifications.
 I {¶ 16} In his first assignment of error, appellant asserts that his constitutional rights to due process of law and to confrontation of witnesses were violated by the state's use of inadmissible hearsay testimony to establish his guilt. Appellant argues that the state's case was based upon numerous instances of testimonial hearsay in making its case and that such hearsay evidence was unduly prejudicial. Appellant offers two examples from the record to support this assertion.
 {¶ 17} Appellant objects specifically to the testimony of Detective Woyma relating to the contents of an out-of-court statement given to police by Demetrius Frazier, who was not called as a witness by the state. However, the record reflects that the trial court granted appellant's motion to strike this testimony as "pure hearsay" and stated: "So, I'm going to strike that from the Court's consideration as *Page 7 
substantive evidence." The court also stated in reference to appellant's motion to strike, "I'll strike it and I'll treat it as though I had not heard it."
 {¶ 18} Appellant's second example relates to the state's questioning the same witness about possible admissions Tramble, Dupree, Burton, and Harper may have made in juvenile court proceedings. The record reflects that the court sustained appellant's objection and further stated, "I don't think you're capable of taking something adjudicated as a delinquency charge — an adjudicated delinquency charge in Juvenile Court and using that to prove the underlying fact represented by that charge in this Court."
 {¶ 19} Appellant relies upon this court's decision in State v.Brewer, Cuyahoga App. No. 87701, 2006-Ohio-6029. In that case we stated, "[i]n deciding whether admission of these hearsay statements was unduly prejudicial to [the defendant], `[o]ur judgment must be based on our own reading of the record and on what seems to us to have been the probable impact of the * * * [statements] on the minds of an average jury'" Id. at _11, citing Harrington v. California (1969), 395 U.S. 250, 254.
 {¶ 20} Appellant's reliance on the Brewer decision is unfounded. There was considerably less danger of prejudice to the appellant in the instant case than in Brewer because the fact-finder was a judge rather than a jury, and a judge is presumed to know to disregard hearsay testimony. "[W]here a trial judge acts as the fact finder, a reviewing court will be slow to overturn an adjudication on the basis *Page 8 
of the admission of inadmissible testimony, unless it appears that the court below actually considered such testimony in arriving at its judgment, as the trial judge is presumed capable of disregarding improper testimony." In re Sims (1983), 13 Ohio App.3d 37, 41.
 {¶ 21} It does not appear from the record that the trial court considered any of the improper testimony in reaching its verdict. The record demonstrates that the trial court specifically stated it would not consider the inadmissible testimony. The trial court did not admit the contested hearsay evidence, it sustained appellant's objections to the testimony and struck it from the record. Appellant's first assignment of error lacks merit and is overruled.
 II {¶ 22} Appellant's second assignment of error asserts that there was insufficient evidence to support the convictions and that the convictions are against the manifest weight of the evidence. We disagree.
 {¶ 23} With respect to sufficiency of the evidence, "sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law. State v.Thompkins (1997), 78 Ohio St.3d 380, 386, 1997-Ohio-52. When reviewing the sufficiency of the evidence, an appellate court's function is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a *Page 9 
reasonable doubt. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id. On appeal, the reviewing court will not disturb the verdict unless it finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact.State v. Dennis (1997), 79 Ohio St.3d 421, 430, 1997-Ohio-372.
 {¶ 24} In reviewing a challenge to the verdict based on manifest weight of the evidence, this court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the judge, as fact-finder, clearly lost her way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins, supra. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id. at 387.
 {¶ 25} The state charged that appellant was guilty, both directly and by way of complicity,[2] of attempted murder, felonious assault, improperly discharging a firearm *Page 10 
at or into a habitation, and directly of having a weapon under disability. Ohio's complicity statute, R.C. 2923.03(A), provides, in pertinent part:
 {¶ 26} "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 {¶ 27} "* * *
 {¶ 28} "(2) aid or abet another in committing the offense."{¶ 29} Aiding and abetting may be shown by both direct and circumstantial evidence, and participation may be inferred from presence, companionship, and conduct before and after the offense is committed. State v. Cartellone (1981), 3 Ohio App.3d 145, 150.
 {¶ 30} Testimony by both Tramble and Harris put appellant at the scene at the time of the shooting. Both provided almost identical testimony relating to the facts leading up to the shooting; about the group's anger over the stabbing of Burton's cousin and how an unidentified person yelled that the "dude" that did it was coming up the street. Both testified to everyone jumping up and running outside, and to Tramble and Dupree firing their weapons at the van. Both witnesses put the "3030" in Tramble's hands and the 9 mm in Dupree's. Harris testified that appellant owned a .45 caliber weapon. Tramble testified that appellant stood next to him outside and fired a .45 caliber weapon. The police found two spent .45 caliber shells in the driveway along with spent shells from the other weapons, indicating that appellant *Page 11 
fired more than once. Police found bullet holes in the van at a level that could have killed the driver.
 {¶ 31} When viewed in a light favorable to the state, there is sufficient evidence that this was a joint and concerted effort and that appellant acted in complicity with Tramble and Dupree in shooting at and into the van they believed to be occupied by someone who was the subject of their ire. From the number of bullets fired, the placement of the bullet holes, and the testimony of the witnesses, there was sufficient evidence that the participants in the shooting were avenging the prior stabbing incident and purposely attempting to cause the death of the van's driver. Likewise, the evidence showed that the shooters caused or attempted to cause physical harm to another by means of a deadly weapon or dangerous ordnance. Thus, the state provided sufficient evidence to satisfy all of the elements of attempted murder under R.C. 2923.03 and2903.02 and felonious assault under R.C. 2903.11.
 {¶ 32} Mr. Dugan heard gunshots fired at the same date and time of this incident. He testified a bullet came through his dining room window and that he had to get down on the floor with his wife and children. The police found a bullet hole in Mr. Dugan's house, located down the street, in a straight line from the shooting. Mr. Dugan found a spent bullet slug in his guest bedroom. Although forensic tests were not conducted on the spent bullet, it is reasonable to conclude that the bullet came from one of the weapons fired by appellant, Tramble, or Dupree. Therefore, there *Page 12 
was sufficient evidence presented of appellant's complicity in the improper discharging of a firearm at or into a habitation in violation of R.C. 2923.161.
 {¶ 33} Finally, with regard to the weapon disability, there was sufficient evidence to prove that appellant knowingly had, and used, a firearm. Since the parties stipulated to appellant's prior drug conviction, the evidence was sufficient to support appellant's conviction for having a weapon while under disability in violation of R.C. 2923.161.
 {¶ 34} The trial court was fully aware that the claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion. R.C. 2923.03(D). There is nothing in the record to suggest that the trial court clearly lost its way in this case. This is not one of those exceptional cases where the evidence weighs heavily against the convictions. Appellant's second assignment of error is overruled and the judgment of the trial court affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 13 
SEAN C. GALLAGHER, P.J., and PATRICIA ANN BLACKMON, J., CONCUR
[1] There is some confusion over the correct spelling of Mr. Burton's first name. Appellee's brief refers to him as both Darell and Darrell while appellant's brief uses both Darrell and Darnell.
[2] A defendant may be charged with complicity or aiding and abetting, although not formally indicted as such because Ohio law does not require complicity or conspiracy to be charged in the indictment in every instance. State v. Lett, 160 Ohio App.3d 46. A charge of complicity may be stated in terms of the principal offense. Id., citing R.C.2923.03(F). In this case, appellant was indicted on both the principal offense and complicity. *Page 1