[Cite as *State v. Shropshire*, 2016-Ohio-7224.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 103808

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## KYTRICE SHROPSHIRE

DEFENDANT-APPELLANT

---

### JUDGMENT:
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-583600-A

**BEFORE:** Jones, A.J., Stewart, J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** October 6, 2016

**ATTORNEY FOR APPELLANT**

Richard Agopian
1415 West Ninth Street, 2nd Floor
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: Kerry A. Sowul
        Steven McIntosh
Assistant County Prosecutors
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., A.J.:

{¶1} Defendant-appellant, Kytrice Shropshire, appeals his conviction for having weapons while under disability. We affirm.

## I.    Procedural History and Facts

{¶2} In 2014, Shropshire was charged with two counts of attempted murder, two counts of felonious assault, discharge of a firearm on or near prohibited premises, two counts of retaliation, and having weapons while under disability. The attempted murder and felonious assault charges had the following specifications attached to them: one- and three-year firearm specifications, notices of prior convictions, and repeat violent offender specifications. The discharge of a firearm count had one- and three-year firearm specifications.

{¶3} The matter proceeded to a trial by jury on all counts except the having weapons while under disability count; Shropshire elected to try that count to the bench. He also elected to bifurcate the specifications and notices of prior conviction. The following pertinent evidence was presented.

{¶4} Dionte Hamilton lived in the house he grew up in on the east side of Cleveland with his mother and various other family members. He grew up living across the street from Shropshire, but the two were not friends because Hamilton was older. In 2010, Hamilton had a brief sexual relationship with Shropshire's sister. It did not end well and Hamilton ended up getting into a fight with one of Shropshire's and the sister's older brothers because the sister accused Hamilton of breaking her nose.

{¶5} On August 19, 2013, Hamilton was walking home from work when a guy passed him, nodded, and "then after that I heard a boom sound and I had got [shot] in my back." Hamilton thought that person shot him. He started to run, ran past Shropshire's house and "then that's when Kytrice had approached me and shot me in the face." Hamilton was shot numerous times, including twice in his arm, in the neck, face, twice in the back, and five times in his leg, and in his buttocks; 14 bullets remained lodged in his body.

{¶6} Hamilton initially did not identify Shropshire as one of the shooters because he was scared for his family and because he knew that Shropshire "would eventually end up going to jail for something else." According to Hamilton, it was only after his family's house "got shot up" two months after he was shot that he knew he had to tell the police who had shot him.

{¶7} Hamilton's younger sister testified that she was home when her brother was shot, but she did not see who shot him. She denied telling police it was Shropshire who shot her brother, but had identified another man on the scene who was "tall with dreads."

{¶8} Hamilton's uncle, Maurice Hamilton, testified that he went to the hospital after finding out that his nephew had been shot. His nephew was hysterical and in pain and told him that Shropshire was one of the shooters.

{¶9} Officer Rebecca Werner testified that she was working on August 19 and 20, 2013, when she received a call for a male shot. When she and her partner responded, they observed three young males coming from the park; one of the males appeared to be

injured. Shropshire was identified as the injured male who had been shot in the buttocks and he was taken to the hospital for treatment. Shropshire stated to Officer Werner that he had been sitting on his front porch when he saw some type of shooting or robbery occur. He got up and ran off his porch and discovered he had been shot while sitting on the porch.

{¶10} At the hospital, Shropshire told Officer James Thomas that Hamilton was walking past his house when three masked men approached Hamilton and there was "some sort of exchange of gunfire, multiple shots," and Shropshire ran from his porch and it was then that he was shot in the buttocks.

{¶11} Detective Charles Teel processed the scene and recovered multiple bullets, bullet fragments, and shell casings, which indicated that three different types of firearms were used in the shooting — a shotgun, a nine millimeter gun, and an unknown caliber firearm.

{¶12} Detective Louis Vertosnik of Cleveland Police Gang Impact Unit testified that Shropshire and two juveniles detained with him were known members of the "J Park Boys," a local gang.

{¶13} Days prior to the shooting, Shropshire was a passenger in a car that was stopped for an unrelated shooting incident. The police seized Shropshire's cell phone and searched it pursuant to a warrant. The police found photographs of semiautomatic pistols and a semiautomatic rifle on his phone. Those photographs, which showed that the pictures were taken at Shropshire's house, were used approximately three months later

to support a search warrant for his home. Pursuant to the search warrant, police recovered a live .45 caliber round, a 12-gauge shotgun with one live round, nine 12-gauge shotgun shells, miscellaneous ammunition, and mail addressed to Shropshire.

{¶14} The jury acquitted Shropshire of all charges. The trial court convicted Shropshire of having weapons under disability and sentenced him to 18 months in prison. Further facts will be discussed under the appropriate assignments of error.

## II. Assignments of Error

I: The trial court erred by failing to suppress evidence obtained from appellant's cell phone, and his residence in violation of U.S. Constitution Amendment IV, and Ohio Constitution Article I, Section l4.

II: The defendant was denied due process of law, a fair trial, the right to be present during a critical stage of the trial, his right to confront evidence against him, and to a public trial in violation of the Fifth, Sixth, and Fourteenth Amendments of the U.S. Constitution and Article I, Sections l0 and l6 of the Ohio Constitution.

III: In a multiple count case where the defendant elects to bifurcate the counts so that some are tried to the jury and others to the bench, it is improper for the trial court as factfinder, on the bench-tried counts, to discuss the jury's verdict with the jury foreperson before the court reaches its verdict.

IV: The defendant was prejudiced and denied his right to a fair trial and due process of law guaranteed to him by both the United States Constitution and Ohio Constitution.

V: The bench trial conviction of the defendant for having weapons under disability was a clear violation of his constitutional rights to be free from Double Jeopardy and/or violated the common equitable principle of Collateral Estoppel.

VI: The defendant's convictions are against the manifest weight of the evidence.

VII:   It was prejudicial error to allow testimony about the defendant's gang membership.

### III.   Law and Analysis

## A.   No error in denying motion to suppress

{¶15} In the first assignment of error, Shropshire argues that the trial court erred in denying his motion to suppress the evidence obtained from his cell phone and his residence.   We disagree.

{¶16} This court reviews a decision on a suppression motion under a mixed standard of review.   "In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility."   *State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist.1994). The reviewing court must accept the trial court's findings of fact in ruling on a motion to suppress if the findings are supported by competent, credible evidence.   *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

{¶17} On August 14, 2013, days before the shooting involving Hamilton, the Cleveland police received a call about a drive-by shooting.   Police conducted a traffic stop in connection with the call.   As mentioned, Shropshire was a passenger in the vehicle and the police seized his cell phone in connection with the stop.   Police obtained a search warrant to search the cell phone and found pictures of various guns on his phone; the police were able to determine that the   photos had been taken inside Shropshire's house.

{¶18} After Hamilton identified Shropshire as one of the shooters, police obtained

a search warrant for Shropshire's house and confiscated firearms and ammunition. Prior to trial, Shropshire moved to suppress the contents of the phone and the items seized from his house, arguing that the police did not have probable cause to seize and search the phone or the house. The state filed a brief in opposition and the court heard from the parties prior to trial. The court did not hold a formal hearing on the motion and denied the motion prior to the start of trial.

{¶19} "The Fourth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 14, prohibit unreasonable searches and seizures." *State v. Emerson*, 134 Ohio St.3d 191, 2012-Ohio-5047, 981 N.E.2d 787, ¶ 15. This constitutional guarantee is protected by the exclusionary rule, which mandates exclusion from trial evidence obtained from an unreasonable search and seizure. *Id.*

{¶20} Shropshire argues that the affidavit in support of the search warrant of his cell phone lacked probable cause. To determine whether an affidavit submitted in support of a search warrant establishes probable cause, an issuing court must make a practical, common-sense decision based upon all the circumstances set forth in the affidavit, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, that there is a fair probability that contraband or evidence of a crime will be found in a particular place. *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph one of the syllabus; *Illinois v. Gates*, 462 U.S. 213, 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

{¶21} The duty of a reviewing court is more limited — an appellate court should

not substitute its judgment for that of the trial court by conducting a de novo determination. *George* at paragraph two of the syllabus. The duty of the reviewing court is simply to ensure that the trial court had a substantial basis for concluding that probable cause existed, after according great deference to the issuing judge's determination and resolving doubtful or marginal cases in favor of upholding the warrant. *Id.*, following *Gates*; *see also State v. Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, ¶ 13-14. Reviewing courts must examine the "totality of the circumstances" in determining whether a search warrant was issued upon a proper showing of probable cause. *Jones* at ¶ 13, citing *Gates* at 238.

{¶22} Shropshire claims that the supporting facts in the affidavit were uncorroborated and insufficient to show probable cause to search his cell phone because the police did not include any facts showing that he was involved in the August drive-by shooting. The supporting affidavit stated, in part: (1) on August 14, 2013, police received a report that two people were shot at by occupants of a tan Chevy Cavalier; (2) less than two hours after the shooting, a vehicle matching that description was stopped; the driver was found in possession of a firearm, and was arrested; (3) Shropshire was a passenger in the car; (4) Shropshire and other people in the car were believed to be members of the "J Park Boys" gang; (5) and gang members use social media and messaging to boast about crimes they commit.

{¶23} The warrant to search Shropshire's phone was issued less than a week after the phone was seized. Shropshire was riding in a car that matched the description

of a car involved in a drive-by shooting that occurred less than two hours prior to the seizure of the phone. The driver of the car Shropshire was riding in had a gun and was arrested. At the time the police seized Shropshire's phone, the police had knowledge that Shropshire and other occupants of the car were members of a local gang, which was known for using social media and cell phones to record their crimes. Thus, based on the totality of the circumstances set forth in the affidavit, the trial court had a substantial basis for concluding that there was probable cause to justify the issuance of the warrant to search Shropshire's mobile phone.

{¶24} Shropshire further argues that the affidavit to search his family's house was not supported by probable cause because the facts upon which the warrant was based were stale.

{¶25} An affidavit in support of a search warrant must present timely information and include facts so closely related to the time of issuing the warrant as to justify a finding of probable cause at that time. *State v. Ingold*, 10th Dist. Franklin No. 07AP-648, 2008-Ohio-2303, ¶ 22, citing *State v. Hollis*, 98 Ohio App.3d 549, 554, 649 N.E.2d 11 (11th Dist.1994). "'Whether the proof meets this test must be determined by the circumstances of each case.'" *Ingold* at *id.*, quoting *Hollis* at *id.* There is no arbitrary time limit that dictates when information becomes stale; rather the test for staleness is whether the alleged facts justify the conclusion that contraband is probably on the person or premises to be searched at the time the warrant issues. *See State v. Prater*, 12th Dist. Warren No. CA2001-12-114, 2002-Ohio-4487, ¶ 12. If a substantial period

of time has elapsed between the commission of the crime and the search, the affidavit must contain facts that would lead the judge to believe that the evidence or contraband are still on the premises before the judge is justified in issuing a warrant. *State v. Yanowitz*, 67 Ohio App.2d 141, 147, 426 N.E.2d 190 (8th Dist.1980). Ohio courts have identified a number of factors to consider in determining whether the information contained in an affidavit is stale, including the character of the crime, the criminal, the thing to be seized, the place to be searched, and whether the affidavit relates to a single isolated incident or ongoing criminal activity. *Prater* at ¶ 13.

**{¶26}** Detective Louis Vertosnik of the Cleveland Police Department had been a member of the department's specialized Gang Impact Unit for seven years and on the force for 18 years. He averred that Shropshire was the prime suspect in Hamilton's shooting; Shropshire's cell phone contained pictures of firearms; the GPS data on one of the images identified Shropshire's residence as the origin of the photograph; Shropshire and Hamilton knew each other and had a violent history; the shooting occurred near Shropshire's house; witnesses reported muzzle flashes coming from Shropshire's front porch; Shropshire was a member of the "J Park" gang; the police had twice previously linked Shropshire to having guns at his house; based on the detective's training and experience, gang members store firearms at their homes, remove them to commit criminal activity, and then return them to their homes for safekeeping.

**{¶27}** We find that although three months had passed between the time the police seized Shropshire's phone and the time the search warrant for his house was issued, the

information contained in the search warrant was not stale. Detective Vertosnik explained that Shropshire was the lead suspect in Hamilton's shooting, the police had recovered photos of guns from Shropshire's phone, Shropshire was a known gang member, the police had previously linked Shropshire to having weapons at his house, and gang members often kept firearms after committing crimes with them rather then disposing of them.

{¶28} And, importantly, Hamilton had just identified Shropshire as the shooter shortly before the police sought the search warrant. "'Where recent information corroborates otherwise stale information, probable cause may be found.'" *Ingold*, 10th Dist. Franklin No. 07AP-648, 2008-Ohio-2303 at ¶ 35, quoting *United States v. Spikes,* 158 F.3d 913 (F.C.A.6, 1998).

{¶29} Thus, based on the totality of the circumstances, the issuing judge could reasonably infer that Shropshire was still keeping one or more of the guns used in Hamilton's shooting at his house. We find that the facts as detailed in the affidavit provided the issuing trial court with probable cause to justify the issuance of the warrant. The first assignment of error is overruled.

## B. No plain error in court's talking with jury after verdict

{¶30} In the second assignment of error, Shropshire argues that he was denied due process when the trial court spoke to the jury after the jury's verdict and without the defendant present, but before the trial court rendered its verdict on the weapons under disability count.

{¶31} The defendant has a fundamental right to be present at all critical stages of the defendant's criminal trial. *State v. Nolan*, 8th Dist. Cuyahoga No. 88111, 2007-Ohio-1299, ¶ 38, citing *State v. Hill*, 73 Ohio St.3d 433, 444, 653 N.E.2d 271 (1995). A defendant's right to be present at trial, however, is not absolute. *Nolan* at *id.*, citing *State v. White*, 82 Ohio St.3d 16, 693 N.E.2d 772 (1998). Prejudicial error exists only where "a fair and just hearing [is] thwarted by [defendant's] absence." *White* at *id.*, citing *Snyder v. Massachusetts*, 291 U.S. 97, 108, 54 S.Ct. 330, 78 L.Ed. 674 (1934).

{¶32} In this case, after the jury returned its not guilty verdicts, but before the trial court gave its verdict on the weapons under disability count, the court went on the record and stated the following: "I want to let the parties know I did speak to the jury after they rendered their verdict. I wanted to be open and give the parties an opportunity to object, if any, but I thought I'd put it out there for the record." The attorneys for both parties stated that they had no objection. The court returned a finding of guilty on the weapons while under disability count and then, after a brief conversation with the attorneys at sidebar, continued, "And just for clarification, I did want to put on the record that any conversation I did have with the jury had no bearing on my decision regarding the bifurcated count for which I found Mr. Shropshire guilty."

{¶33} Shropshire did not object to the trial court's action; therefore, he has waived all but plain error. Pursuant to Crim.R. 52, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the

court."  To show plain error, a defendant must demonstrate "'that the trial's outcome would clearly have been different but for the alleged errors.'"  *State v. George*, 8th Dist. Cuyahoga No. 80158, 2003-Ohio-4170, ¶ 26, quoting *State v. Campbell*, 69 Ohio St.3d 38, 49, 630 N.E.2d 339 (1994).  Notice of plain error is taken with the utmost caution, under exceptional circumstances, and only to prevent the manifest miscarriage of justice. *George* at *id.*, citing *State v. Landrum*, 53 Ohio St.3d 107, 111, 559 N.E.2d 710 (1990).

{¶34} Shropshire has not shown that the outcome of his trial would have been different had the trial court not spoken to the jury before it issued its verdict on the weapons under disability count.  Although the conversation the court had with the jury was off the record, Shropshire's claim that the conversation was improper is unsupported and his assumptions are insufficient to overcome the plain error burden, especially in a case such as this where the trial court expressly stated that its discussion with the jury had no bearing on the court's decision.  Further, we note that the discussion did not occur at a time where testimony was still being given or one in which Shropshire's knowledge was necessary to help with his defense.  *See State v. Woods*, 8 Ohio App.3d 56, 61, 455 N.E.2d 1289 (8th Dist.1982) (defendant cannot be excluded from testimonial proceedings where defendant's knowledge might assist counsel).

{¶35} In light of the above, the second assignment of error is overruled.

{¶36} In the third assignment of error, Shropshire claims that it was improper for the trial court to discuss the jury's verdict with the jury before the court rendered its own

verdict on the weapons charge.[1]

{¶37} We again review this claim for plain error because Shropshire did not object to the trial court's action. The failure to object has been held to constitute a waiver of the error and to preclude its consideration upon appeal, because, absent an objection, the trial court is denied an opportunity to give corrective instructions as to the error. *State v. Loza*, 71 Ohio St.3d 61, 75, 64l N.E.2d 1082 (1994). In Ohio, the trial court is entitled to the presumption of regularity, that is, the trial court is presumed to know and follow the law in arriving at its judgment unless it affirmatively appears to the contrary. *State v. Eley*, 77 Ohio St.3d 174, 180, 672 N.E.2d 640 (1996), citing *State v. Post*, 32 Ohio St.3d 380, 513 N.E.2d 754 (1987). In other words, in an appeal from a bench trial, we presume that a trial court relies only on relevant, material, and competent evidence in arriving at its judgment. *Id.* at 180.

{¶38} The United States Supreme Court has stated that:

In bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions. It is equally routine for them to instruct juries that no adverse inference may be drawn from a defendant's failure to testify; surely we must presume that they follow their own instructions when they are acting as fact finders.

*Harris v. Rivera*, 454 U.S. 339, 346, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981); *White v.*

---

[1] The third assignment of error, as it reads, states that the trial court discussed the jury verdict with the jury foreperson. This assertion does not appear elsewhere in Shropshire's appellate brief or in the trial court record.

*Shewalter*, N.D.Ohio No. 1:10CV1265, 2012 U.S. Dist. LEXIS 94123 (Mar. 14, 2012).

**{¶39}** Again, Shropshire's failure to object means it is unknown what transpired between the jury and the trial court when the court spoke with the jury after trial. In other words, because Shropshire did not object, the trial court was not required to give an on-the-record explanation of its actions or detail its conversation with the jury. Shropshire claims that the trial court acted improperly, but, as mentioned, this is an unsupported assertion. Moreover, the trial court clearly stated that its verdict on the weapons while under disability charge was not influenced by its discussion with the jury.

**{¶40}** Consequently, Shropshire cannot show that the trial court acted improperly or committed plain error and the third assignment of error is overruled.

## C. Witness's statements were excited utterances

**{¶41}** In the fourth assignment of error, Shropshire contends that the trial court erred when it allowed testimony from Maurice Hamilton, the victim's uncle. Shropshire challenges statements Hamilton made to his uncle identifying Shropshire as the shooter. Shropshire argues that the trial court considered these inadmissible statements to conclude that Shropshire had a weapon at some point and therefore could be convicted of having weapons while under disability. We disagree.

**{¶42}** Generally, the decision whether to admit or to exclude evidence rests within the sound discretion of the trial court. *State v. Brown*, 8th Dist. Cuyahoga No. 99024, 2013-Ohio-3134, ¶ 50, citing *State v. Jacks*, 63 Ohio App.3d 200, 207, 578 N.E.2d 512 (8th Dist.1989). Therefore, an appellate court that reviews the trial court's decision with

respect to the admission or exclusion of evidence must limit its review to a determination of whether the trial court committed an abuse of discretion. *Brown* at *id.*, citing *State v. Finnerty*, 45 Ohio St.3d 104, 107, 543 N.E.2d 1233 (1989). An abuse of discretion requires a finding that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Minifee*, 8th Dist. Cuyahoga No. 99202, 2013-Ohio-3146, ¶ 23, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶43} Evid.R. 803(2) defines an excited utterance as a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" and excludes it from the hearsay rule, even when the declarant is available as a witness. To be an admissible excited utterance, (1) there must occur an event startling enough to produce a nervous excitement in the declarant; (2) the statement must be made while the declarant is still under the stress of excitement the event caused; (3) the statement must relate to the startling event; and (4) the declarant must have personally observed the startling event. *State v. Harrison*, 10th Dist. Franklin No. 06AP-827, 2007-Ohio-2872, ¶ 17, citing *State v. Taylor*, 66 Ohio St.3d 295, 612 N.E.2d 316 (1993). The controlling factor comes down to whether the declaration resulted from impulse as opposed to reason and reflection. *State v. Webster*, 8th Dist. Cuyahoga No. 102833, 2016-Ohio-2624, ¶ 130, citing, *State v. Nixon*, 12th Dist. Warren No. CA2011-11-116, 2012-Ohio-1292, ¶ 13.

{¶44} Additional factors for the court to consider include the lapse of time between the event and the statement, the mental and physical condition of the declarant,

the nature of the statement, and the influence of any intervening circumstances. *Harrison* at *id.*, citing *State v. Patterson*, 11th Dist. Lake No. 96-T-5439, 1998 Ohio App. LEXIS 2289 (May 22, 1998).

{¶45} Shropshire contends that Hamilton's statement to his uncle identifying Shropshire as one of the shooters does not fall under the excited utterance exception, but a review of the uncle's testimony shows otherwise.

{¶46} Maurice Hamilton, a retired detective, testified he went to the emergency room immediately upon learning that his nephew had been shot. He saw that his nephew had several gunshot wounds and described him as in "substantial pain," "moaning," "groaning," "crying," and "hysterical." Maurice asked his nephew "who did this to him," and his nephew replied, "Kytrice." Maurice then assisted the doctors with counting the number of entry and exit wounds his nephew had sustained.

{¶47} Hamilton had been shot numerous times and was clearly still under the stress of the shooting; Maurice testified that his nephew was hysterical and in pain. The doctors were still assessing how many times Hamilton had been shot and the location of the bullet wounds. Hamilton was clearly still under the stress of the shooting when he answered his uncle's question. In light of these facts, we find the statement admissible under Evid.R. 803(2).

{¶48} The fourth assignment of error is overruled.

**D.   Appellant's double jeopardy rights were not violated**

{¶49} In the fifth assignment of error, Shropshire argues that his having weapons

while under disability conviction was so inconsistent with the not guilty verdicts on the other counts as to violate his constitutional rights against double jeopardy.

**{¶50}** The United States Supreme Court has held that double jeopardy generally does not apply to cases involving inconsistent jury verdicts. *Dunn v. United States*, 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1932); *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984). Shropshire cites a case from the Maryland Court of Appeals, which held that it was error for the trial court to render a "guilty" verdict that was inconsistent with a "not guilty" verdict rendered by the jury in a criminal trial. *Galloway v. State*, 371 Md. 379, 401, 809 A.2d 653 (2002).

**{¶51}** Shropshire concedes that the *Galloway* case is not binding on our court. Instead, we look to a case from this district for guidance. In *State v. White*, 8th Dist. Cuyahoga No. 90839, 2008-Ohio-6152, the defendant was charged with ten counts of felonious assault, two counts of improperly discharging a firearm at or into a habitation, and two counts of having a weapon while under disability. The defendant chose to try the disability counts to the court, but submitted the remaining counts to the jury. The jury returned not guilty verdicts on all counts and the trial court found him guilty of two counts of having a weapon while under disability.

**{¶52}** On appeal, the defendant argued that his convictions were against the manifest weight of the evidence because the guilty finding on the disability counts would be inconsistent with the jury's not guilty findings on felonious assault. *Id.* at ¶ 13. This court disagreed, finding that the verdicts were not inconsistent because "[t]he

distinction between the charged offenses is that having a weapon while under disability only requires a showing that White possessed a firearm, not that White actually discharged the firearm." *Id.* at ¶ 14.

{¶53} In finding Shropshire not guilty of attempted murder, felonious assault, retaliation, and discharge of a firearm on or near a prohibited premises, the jury apparently could not find, beyond a reasonable doubt, that Shropshire committed those offenses. But the elements of those crimes and the elements of having weapons while under disability are different. No element of having a weapon while under disability requires that Shropshire *use* a firearm; the elements require that he acquire, have, carry, *or use* a firearm. *See* R.C. 2923.13(A). Shropshire stipulated to his prior adjudication as a delinquent child for a commission of an offense, that if committed by an adult, would have been a felony offense of violence. R.C. 2923.13(A)(2). The trial court, as trier of fact on the weapons while under disability count, was free to believe Hamilton's testimony that Shropshire had a firearm that night and was not precluded from finding that Shropshire acquired, had, carried, or used a firearm under R.C. 2923.13(A).

{¶54} In the light of the above, the fifth assignment of error is overruled.

**E. Weapons while under disability conviction not against the weight of the evidence**

{¶55} In the sixth assignment of error, Shropshire argues that his conviction was against the manifest weight of the evidence. When presented with a challenge to the manifest weight of the evidence, an appellate court may not merely substitute its view for

that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶56} Shropshire sets forth various arguments for why he believes his conviction was against the manifest weight of the evidence, mainly focusing on his perceived inconsistencies in witness testimony. He relies heavily on the fact that Hamilton initially told police he did not know who shot him but changed his story three months later and identified Shropshire. But Hamilton was questioned and thoroughly cross-examined on this very subject. He explained that he initially did not identify Shropshire because he was afraid for his family and figured that Shropshire would go to jail for another crime. It was only after his family's house was "shot up" and pressure from his mother that he decided to identify Shropshire. And Hamilton's identification is corroborated by his uncle, who testified that Hamilton identified "Kytrice" as the shooter in the hospital just after the shooting.

{¶57} Again, as for the weapon while under disability charge being tried to the bench, we cannot say that the verdict is against the manifest weight of the evidence due to

the fact that the jury acquitted Shropshire of the other charges. The jury's not-guilty verdicts do not preclude the trial judge from finding that Shropshire had a weapon while under disability; the trial judge was free to believe the state's theory that Shropshire acquired, had, carried, or used a firearm.

{¶58} The sixth assignment of error is overruled.

## F. No error in allowing testimony in about appellant's gang affiliation

{¶59} In the seventh assignment of error, Shropshire argues that it was prejudicial error to allow the gang impact unit detective to testify about Shropshire's affiliation with the J Park Boys gang.

{¶60} During trial, the state informed the court of its intention to have a Detective Louis Vertosnik of Cleveland Police Gang Impact Unit testify about his knowledge of the J Park Boys gang, including that Shropshire and the two juveniles detained after the shooting were members of that gang. After defense counsel objected, the court held a lengthy discussion without the jury present and questioned the detective. The court ruled that the detective could testify, but limited the testimony to the detective's occupation, knowledge of the J Park Boys' existence and its territory, and whether Shropshire and the two juveniles were members of the gang. The state appropriately limited its questions.

{¶61} We find no error in the trial court's admission of the detective's testimony. But even if the trial court had erred in allowing the detective to testify, "where a trial judge acts as the factfinder, a reviewing court will be slow to overturn an adjudication on

the basis of the admission of inadmissible testimony, unless it appears that the court below actually considered such testimony in arriving at its judgment, as the trial judge is presumed capable of disregarding improper testimony." *State v. Lipscomb*, 8th Dist. Cuyahoga No. 89116, 2007-Ohio-6815, ¶ 2; *In re Sims*, 13 Ohio App.3d 37, 41, 468 N.E.2d 111 (12th Dist.1983). There is no evidence that the trial court considered the detective's testimony in reaching its verdict.

**{¶62}** The seventh assignment of error is overruled.

**{¶63}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES, SR., ADMINISTRATIVE JUDGE

MELODY J. STEWART, J., and
FRANK D. CELEBREZZE, JR., J., CONCUR