[Cite as *State v. Mosby*, 2024-Ohio-5210.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                     No. 113545

    v.                           :

RAHSAAN MOSBY,                          :

    Defendant-Appellant.         :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED
IN PART, AND REMANDED
**RELEASED AND JOURNALIZED:** October 31, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-681259-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Glen Ramdhan, Assistant Prosecuting Attorney, *for appellee*.

Cullen Sweeney, Cuyahoga County Public Defender, and Aaron T. Baker, Assistant Public Defender, *for appellant*.

KATHLEEN ANN KEOUGH, A.J.:

{¶ 1} Defendant-appellant, Rahsaan Mosby, appeals from the trial court's judgment, rendered after a jury verdict, finding him guilty of one count each of rape and kidnapping and sentencing him to life in prison with parole eligibility after ten

years on each count, to be served consecutively, plus fines and costs. We affirm Mosby's convictions but reverse the fines and remand for a limited resentencing hearing at which the court shall consider Mosby's present ability to pay any fine it may impose.

## I. Background

{¶ 2} In May 2023, a Cuyahoga County Grand Jury indicted Mosby for rape in violation of R.C. 2907.02(A)(2) (Count 1) and kidnapping in violation of R.C. 2905.01(A)(4) with a sexual motivation specification (Count 2). Both counts carried one- and three-year firearm specifications and a sexually violent predator specification. Mosby pleaded not guilty, and the case proceeded to a jury trial. Immediately prior to trial, Mosby waived a jury trial on the sexually violent predator specifications.

{¶ 3} At trial, N.W. testified that around 10 p.m. on December 23, 2023, she and her friend K.L. walked from K.L.'s house on West 95th Street to Blowiez Lounge, a bar located on the corner of West 94th Street and Denison Avenue in Cleveland, Ohio. The women purchased several drinks and played pool. Later, the waitress brought them each a shot that an unknown patron had purchased for them. N.W. testified that K.L. became agitated shortly after she drank the shot so the women prepared to leave the bar. As they neared the door, K.L., who has epilepsy, had an epileptic seizure.

{¶ 4} N.W. testified that she helped K.L. through her seizure and then helped her outside. The women began walking to K.L.'s house but K.L. kept falling

down. N.W. said she helped her up at least three times but when K.L. fell again, N.W. was unable to lift her up. N.W. testified that as K.L. was lying on the sidewalk, a white SUV drove by, turned around in a driveway, and came back to them. The driver, later identified as Mosby, was alone in the SUV and asked N.W. if she needed help. N.W. said she hesitated because she did not know the man and had never seen the SUV before but then told him that they needed a ride to K.L.'s house and he agreed to take them there.

{¶ 5} N.W. said Mosby got out of his car and they both helped K.L. off the ground and then laid her in the back seat of the SUV. N.W. testified that as she shut the rear passenger side door of the SUV and prepared to get in the front passenger seat of the vehicle, Mosby "pressed on the gas and was gone." N.W. said she chased after the SUV but "he was gone already." N.W., who had K.L.'s purse, keys, and cell phone, called the police as she ran to K.L.'s house. State's exhibit No. 2, N.W.'s frantic 911 call, was played for the jury.

{¶ 6} Brandon Bliss, a City of Cleveland police officer, testified that he and his partner responded to K.L.'s home around 4 a.m. on December 24, 2023. He said N.W. was crying hysterically and "under extreme duress" as she told the officers what had happened. Bliss testified that because he was "under the impression" that K.L. had gotten into the SUV willingly, he filed a missing person's report. State's exhibit No. 4, Bliss's body camera video of his interaction with N.W., was shown to the jury.

{¶ 7} K.L. testified that N.W. helped her through the epileptic seizure she had at the bar. She said she remembers stepping outside the bar to go home and the next thing she remembers is waking up in the backseat of the SUV with her pants down around her ankles and a man sitting in the backseat with his pants off. K.L. said the man told her that she could either get out of the vehicle and walk home or have sex with him and he would drive her home. K.L. said that after she told the man repeatedly that she did not want to have sex with him and hit him in the face several times, he got mad and whipped her with his belt. He then pulled a gun out of the console, pointed it at her, and told her that if she did not have sex with him, she would not make it home. K.L., who is a mother to five children, testified that she gave in at this point, and Mosby inserted his penis into her vagina and ejaculated.

{¶ 8} She said that he then got dressed, told her to get dressed and sit in the front seat of the vehicle, which she did, and took her home. K.L. said that Mosby rubbed her leg as he was driving her home and told her this was not the last time she would see him. She said that Mosby's gun was in his lap, with the barrel pointing straight at her, as he drove her home.

{¶ 9} N.W. testified that she saw the white SUV drop K.L. off at her house early in the morning. N.W. said that she went outside to confront the driver but he "just smiled" at her and drove away. She said that when K.L. came in the house, she told N.W. what had happened, showed her welts on her back, and then went to bed. Later that morning, Cleveland police officers came to K.L.'s house and interviewed

her and took pictures of her back and buttocks.  They called an ambulance, which transported K.L. to the hospital, where forensic sexual assault nursing examiner Anna Becks examined her and collected specimens for the rape kit.

{¶ 10} Becks testified that she observed redness, swelling, and abrasions on K.L.'s bottom, thighs, and knees that were consistent with her report of what had happened.  Becks also observed "raised lines" on K.L.'s buttocks and thighs that she said were consistent with K.L.'s report that Mosby hit her with a belt after she hit him in the face.  K.L. testified that although she had some mental health issues prior to the rape, since the rape she has been on medication to treat her depression, has nightmares, and cannot sleep.

{¶ 11} Cleveland police detective Angela Rivera testified that after Mosby's name came up as a suspect, the police reviewed the Ohio Law Enforcement Gateway database and learned that he owned a white SUV.  She testified further that in January 2023, K.L. identified Mosby with 100 percent certainty from a photo lineup as the man who raped her.

{¶ 12} Mosby testified in his own defense.  He said that he was driving around at approximately 4 a.m. on December 23, 2023, looking for prostitutes, as he often did, when he saw two women, one who was lying on the ground "passed out," and the other who flagged him down and asked if he would "take her home." Mosby said he helped K.L. into the backseat of his car and then drove away, even though he saw N.W. waving at him to stop as he drove away.

{¶ 13} Mosby said that while he was driving, he nudged K.L. to try to wake her but when she did not respond, he decided to just drive around until she woke up. He said that he drove to his bank to get money from the ATM because he needed money to do some last-minute Christmas shopping, but instead of going to the bank, he parked his car in the parking lot of an apartment complex across the street from the bank. He then got into the back seat of the SUV and nudged K.L. to wake her up. He testified that when K.L. woke, they "just ha[d] a conversation back and forth" for over an hour, "learning things about each other," and then he finally told her that he wanted to have sex with her.

{¶ 14} Mosby said that he drove his vehicle to the bus stop and told K.L. he would give her bus fare and she could take the bus home if she did not want to have sex with him, but "she just sat there and didn't get out," so he "figured she must be agreeing with my proposition basically." Mosby said he then drove back to the apartment parking lot, parked the vehicle, got in the back seat, and had sex several times with K.L. after she took her clothes off. Mosby denied threatening K.L. with a gun, hitting her, or striking her with a belt, and said that K.L. never said no to anything he was doing. He said that as he drove her home after they had sex, he rubbed her leg and told her he was now her boyfriend. Mosby said he later tried calling K.L. several times but there was no answer to his calls and she did not come out when he stopped by her house and honked the horn so he stopped contacting her.

{¶ 15} The jury found Mosby guilty of rape and kidnapping with a sexual motivation but not guilty of the accompanying firearm specifications on both counts. After a hearing on the sexually violent predator specifications, the trial court found Mosby to be a sexually violent predator. The court sentenced him to life in prison on each count with parole eligibility after ten years, to be served consecutively, and ordered that he pay $40,000 in fines plus costs. This appeal followed.

## II. Law and Analysis[1]

### A. Cross-examination

{¶ 16} The following colloquy occurred during defense counsel's cross-examination of K.L.:

> Q. You said that you don't know anything that happened, though. Once you went out of that bar you were blacked out and you don't know, right?
>
> A. Right.
>
> Q. Your friend said that you were awake when you got into that car?
>
> A. No, I was not awake.
>
> Q. How do you know –
>
> A. Because –
>
> Q. You were blacked out?
>
> A. I know that I came out of that bar, I know that I was walking home.
>
> Q. All right. N[.W.] says –

---

[1] Some assignments of error will be considered out of order to facilitate our analysis.

A. When I got in that car, I don't remember getting in nobody's car. I would never [have] gotten in nobody's car because I don't get in cars with strangers.

Q. So if [N.W.] says that you willingly got in that car, you were awake when you got in that car, and knew that you were getting in that car, she would not be telling the truth?

(Tr. 443-444.) At that point, the court interrupted, ordered the attorneys to sidebar, and instructed defense counsel as follows:

THE COURT: All right. Stick with the evidence on your cross. You are not sticking with the evidence on cross. She did not say that she willingly got in the back seat.

DEFENSE COUNSEL: She was blacked out.

THE COURT: I'm not clear, I'm not going to argue with you, but you're over your head. Stick with the evidence.

DEFENSE COUNSEL: They're not objecting to it.

THE COURT: The court is correcting you.

(Tr. 444-445.) The trial judge then asked K.L. "Are you good?"; she responded, "Yes," and defense counsel resumed cross-examination.

{¶ 17} In his first assignment of error, Mosby contends that the trial court's interruption of his cross-examination of K.L. and its instruction to "stick with the evidence" violated his Sixth Amendment right to fully and fairly confront the witnesses against him.

{¶ 18} The scope of cross-examination is governed by Evid.R. 611(A), which provides:

The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the

truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

Thus, "trial judges may impose reasonable limits on cross-examination based on a variety of concerns, such as harassment, prejudice, confusion of the issues, the witness's safety, repetitive testimony, or marginally relevant interrogation." *Mueller v. Lindes,* 2002-Ohio-5465, ¶ 26 (8th Dist.).

{¶ 19} "'The limitation of . . . cross-examination lies within the sound discretion of the trial court, viewed in relation to the particular facts of the case. Such exercise of discretion will not be disturbed absent a clear showing of an abuse of discretion.'" *Id.* at ¶ 24, quoting *State v. Treesh*, 90 Ohio St.3d 460, 480 (2001). An abuse of discretion is an unreasonable, arbitrary, or unconscionable use of discretion, or a view or action that no conscientious judge could honestly have taken. *State v. Kirkland*, 2014-Ohio-1966, ¶ 67. It includes a ruling that lacks a sound reasoning process. *State v. Morris*, 2012-Ohio-2407, ¶ 14. We find no abuse of discretion here.

{¶ 20} As the trial court found when it explained its admonition, N.W. testified that *she alone* made the decision to accept the stranger's offer for her and K.L. to get in the stranger's car so he could take them home. She said that the man asked *her* if *she* needed help (tr. 347) and after hesitating to accept his offer of a ride because she did not know if she should trust a stranger, *she* said "okay" because she did not know how she would otherwise get K.L. home. (Tr. 349.) There was no testimony whatsoever by N.W. that K.L. ever considered or accepted the stranger's

offer of a ride. In fact, N.W. testified that K.L. was incapacitated as she was lying on the sidewalk, and even defense counsel conceded during the sidebar that K.L. "was blacked out" before she got in Mosby's vehicle. (Tr. 445.) Our review of the record reveals no testimony by N.W. that supports defense counsel's statement to K.L. that N.W. "said that you were awake when you got into that car." (Tr. 444.) Accordingly, defense counsel's statement to K.L. did not comport with the evidence and was misleading.

{¶ 21} Mosby contends, however, that defense counsel's statement about K.L.'s willingness to get in Mosby's SUV was not misleading because it was based on Officer Bliss's earlier testimony that after responding to K.L.'s house, he was "under the impression" that K.L. willingly got into Mosby's vehicle. But defense counsel made no mention whatsoever of Officer Bliss's testimony in the trial court, either immediately at sidebar when the trial court admonished counsel to "stick with the evidence" (tr. 444-445) or later when the trial court explained its ruling in depth and specifically gave defense counsel an opportunity to respond to the court's ruling. (Tr. 507-520.) Accordingly, any argument that Officer Bliss's testimony was the basis for defense counsel's question to K.L. is waived. *State v. Almazan*, 2021-Ohio-1718, ¶ 8 (8th Dist.) (a party cannot raise new arguments and legal theories for the first time on appeal).

{¶ 22} Our review of the record demonstrates that the trial court did not abuse its discretion in instructing defense counsel to "stick with the evidence" while cross-examining K.L. Furthermore, Mosby's assertion that the trial court "berated

and insulted defense counsel for daring to confront [his] accuser with evidence supported by the record" is wholly without merit. The record reflects that the court interrupted K.L.'s cross-examination and brought the attorneys to a sidebar conference as set forth above. There is nothing whatsoever to suggest that the trial court's interruption was made in a "venomous manner," as suggested by Mosby, or that the trial court "berated and insulted defense counsel" by properly instructing him to "stick with the evidence" when cross-examining K.L.

{¶ 23} Because the trial court did not abuse its discretion in limiting defense counsel's cross-examination of K.L., Mosby's constitutional right to fully and fairly confront K.L. was not abridged by the trial court's limitation of cross-examination. The first assignment of error is overruled.

## B. References to K.L. during trial as the "victim"

{¶ 24} Mosby next contends that the trial court erred by permitting references to K.L. as "victim" 34 times in the presence of the jury. He argues that these references "lent a presumption of legitimacy" to K.L.'s accusations so as to deprive him of his right to be presumed innocent, and thus, his right to a fair trial. Because Mosby failed to object to the use of this term at trial, he has waived all but plain error. *State v. Rogers*, 2015-Ohio-2459, ¶ 3, 21 (failure to object to an error in the trial court forfeits all but plain error on appeal). Crim.R. 52(B) authorizes appellate courts to correct "plain errors or defects affecting substantial rights" notwithstanding the accused's failure to meet his obligation to bring those errors to the attention of the trial court. To prevail under a plain error analysis, the appellant

bears the burden of demonstrating that, but for the error, the outcome of the trial would clearly have been different. *State v. Payne*, 2007-Ohio-4642, ¶ 17. Notice of plain error is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶ 25} It is generally recognized that

> [t]he term "victim" means "[a] person harmed by a crime, tort, or other wrong." VICTIM, Black's Law Dictionary (11th Ed.2019). Depending on context, a party's use of the term "victim" at trial may imply that the charged offenses occurred, which reduces the state's burden of proof. Therefore, it is more appropriate for the parties to use the phrase "alleged victim" at trial to reflct the defendant's presumption of innocence.

*State v. Thomas*, 2023-Ohio-3148, ¶ 24 (8th Dist.), quoting *State v. Aboytes*, 2020-Ohio-6806, ¶ 180 (11th Dist.). Nevertheless, depending on context, the "use of the term 'victim' is not necessarily 'the same as expressing an opinion that a defendant is guilty of a crime.'" *State v. Washington*, 2023-Ohio-1667, ¶ 126 (8th Dist.), quoting *State v. Palmer*, 2021-Ohio-4639, ¶ 83 (7th Dist.).

{¶ 26} This court has observed that "unlike trial judges, who must remain neutral and detached, 'a prosecutor is not constrained by any such obligation of neutrality,'" *Thomas* at ¶ 30, quoting *Aboytes* at ¶ 189, because "the jury is aware that prosecutors are advocates and that prosecutors and witnesses have biases." *State v. Jackson*, 2023-Ohio-455, ¶ 25 (8th Dist.). This court has also observed that "law enforcement personnel use the term 'victim' as a 'term of art' synonymous with 'complaining witness.'" *Id.* at ¶ 30, quoting *State v. Madden*, 2017-Ohio-8894, ¶ 32

(10th Dist.). Thus, "a prosecutor's or a witness's use of the term 'victim' to refer to a complaining witness does not rise to the level of plain error." *Jackson* at ¶ 25-26, citing *State v. Butts*, 2020-Ohio-1498,¶ 41 (8th Dist.), and *Madden* at ¶ 26-34 (10th Dist.); *Thomas* at ¶ 29. Applying these principles to this case, we find no plain error regarding the use of the word "victim" during the trial proceedings.

{¶ 27} The record reflects that of the 34 times the word "victim" was used in front of the jury, the prosecutor used the word 12 times and State's witnesses Officer Bliss and Detective Rivera used the word a total of 18 times, all in the context of referring to the identity of the complaining witness. Although it would have been better for the prosecutor and the State's witnesses to use the term "alleged victim," the general use of the word "victim" by the prosecutor and the State's witnesses in this context did not rise to plain error because it was used to refer to the complaining witness and did not express an opinion about the veracity of K.L.'s testimony or whether Mosby was guilty of the reported crimes.

{¶ 28} The record reflects that the judge used the word "victim" four times in the presence of the jury when he explained to the jury the statutory language of the indictment that he would read as part of the jury instructions. (Tr. 801.) Specifically, the judge used the term three times when he reviewed Count One of the indictment with the jury:

> All right. Let's cover the indictment. Count One, Defendant is charged in Count One of the indictment with rape in violation of Ohio Revised Code 2907.02(A)(2).

So the next part I read to you is that statute word for word with the accusation of whoever the victim or Defendant is in the case. It's the only insertion, okay?

So listen closely because this is the only question that you are answering when we read you the charge, then that's the question. Did the State prove beyond a reasonable doubt that this specific law was violated by the Defendant against this specific victim on a specific date? That's yes or no.

If it's yes, that the State proved beyond a reasonable doubt that the crime was – that the statute was violated by the Defendant against that specific victim, then your duty would be to vote yes.

(Tr. 801.) The judge used the term "victim" one other time during jury instructions when he explained the definition of "resistance" to the jury, stating "Resistance. The prosecution need not prove that the victim physically resisted the Defendant." (Tr. 805.)

{¶ 29} These four uses of the term "victim" by the trial judge do not rise to the level of plain error. Mosby has not, and indeed cannot, demonstrate that he would not have been found guilty of rape and kidnapping if the judge had not used the term "victim" four times while explaining the jury instructions to the jury.

{¶ 30} Mosby's reliance on *State v. Almedom*, 2016-Ohio-1553 (10th Dist.) as support for his argument that he was prejudiced as a result of the trial judge's limited use of the word "victim" in this case is misplaced. In *Almedom,* the Tenth District found that the trial judge "repeatedly" told the jury throughout the trial court proceedings that the complaining witnesses were "victims," which the Tenth District found was "in essence . . . telling the members of the jury that the girls were truthful when they claimed that sexual abuse occurred." *Id.* at ¶ 11. The court found

that the judge's repeated references to the girls as "victims," combined with defense counsel's failure to object to these references and counsel's numerous other failures to adequately represent the defendant, denied the defendant the opportunity for a fair trial. *Id.* at ¶ 12.

{¶ 31} Unlike *Almedom*, defense counsel did not consistently fail to adequately represent Mosby. Furthermore, the trial judge in this case did not make repeated references throughout the trial to K.L. as the "victim." The judge's limited use of the term "victim" in front of the jury was in the context of explaining the jury instructions. Moreover, the judge instructed the jury that "I offer no opinion on any witness in any case ever to a jury" because "[t]hat would be invading your authority and your province. You are the judges of the facts, okay?" (Tr. 790.) The judge also instructed the jury that Mosby was presumed innocent until proven guilty by evidence beyond a reasonable doubt (tr. 794), "the attorneys are not witnesses" but "just advocates" (tr. 793), and the jury was "the sole judges of the facts and the credibility of the witnesses." (Tr. 796.) We presume that the jury followed these instructions. *Treesh*, 90 Ohio St.3d at 480.

{¶ 32} Following a thorough review of the record, we find no indication that the adversarial process was undermined or that Mosby was prejudiced as a result of the usage of the term "victim" in the trial court such that its use was plain error requiring reversal and a new trial. The second assignment of error is overruled.

{¶ 33} In his third assignment of error, Mosby contends that his trial counsel was ineffective for not objecting to the use of the term "victim" during trial.

"Reversal of a conviction for ineffective assistance of counsel requires that the defendant show that counsel's performance was deficient and that the deficient performance prejudiced the defendant so as to deprive him of a fair trial." *State v. Trimble,* 2009-Ohio-2961, ¶ 98, citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Having found no plain error in the use of the word "victim," we are unable to conclude that Mosby was prejudiced by counsel's failure to raise timely objections to its usage. The third assignment is overruled.

## C. Jury Instructions

{¶ 34} In his fifth assignment of error, Mosby objects to the italicized language in the following instruction given to the jury:

> The Defendant testified as a witness in this case, and you will weigh his testimony in the same manner as you weigh the testimony of other witnesses who appeared in the case. Just because he is the Defendant is no reason for you to disregard and set aside his testimony, and you will give his testimony the weight it is entitled to receive, *taking into consideration his interest in the outcome of the case*, and apply to his testimony the same rules that you will apply to the testimony of all other witnesses who appeared in this case. It is for you to determine what weight you will give to the testimony of any witness who is appearing in this case.

(Emphasis added.) (Tr. 798.) Mosby contends that the instruction "is inflammatory and implies that Mr. Mosby has an interest in the case such that he may lie to protect that interest." He contends that the instruction invaded the province of the jury and eroded his right to testify in his own defense, thereby requiring reversal and a new trial.

{¶ 35} Defense counsel did not object to this instruction. Under Crim.R. 30(A), the failure to object to jury instructions waives any error relating to the

instructions except in the event of plain error. *State v. Lawwill*, 2007-Ohio-2627, ¶ 41 (8th Dist.). A defective jury instruction does not rise to the level of plain error unless it can be shown that the outcome of the trial clearly would have been otherwise if the instruction was properly given. *Id.*

{¶ 36} This court has repeatedly rejected the challenge Mosby asserts to the jury instruction, finding that "[t]his instruction is a standard instruction in Ohio. When evaluating the credibility of the witnesses, a jury may take into consideration any interest the witness has in the outcome of a case. This instruction applies to all witnesses, not just [the testifying defendant.]" *State v. Bell*, 2006-Ohio-65492, ¶ 55 (8th Dist.); *see also State v. Price*, 2009-Ohio-3503, ¶ 11 (8th Dist.); *State v. Sailor*, 2004-Ohio-5207, ¶ 52 (8th Dist.); *State v. Franklin*, 2001 Ohio App. LEXIS 2072 (8th Dist. May 10, 2001); *State v. Perkins*, 93 Ohio App.3d 672 (8th Dist.1994); *State v. Smith*, 1997 Ohio App. LEXIS 3760 (8th Dist. Aug. 21, 1997); *State v. Valentine*, 1997 Ohio App. LEXIS 3094 (8th Dist. July 17, 1997); *State v. McDade*, 1978 Ohio App. LEXIS 7876 (8th Dist. Sept. 28, 1978); *State v. McRae*, 4 Ohio App.2d 217 (8th Dist. 1965).

{¶ 37} We reject Mosby's invitation to overrule this long-standing precedent. The instruction to the jury was that it should apply to the defendant's testimony "the same rules that you will apply to the testimony of all other witnesses who appeared in this case." Thus, Mosby's argument that the instruction erroneously singled out his testimony and intoned to the jury that they had reason not to believe him, as opposed to other witnesses, is specious. We find no error,

plain or otherwise, in the giving of the instruction and overrule the fifth assignment of error.

{¶ 38} In his sixth assignment of error, Mosby contends that his counsel was ineffective for not objecting to this instruction. Finding no error in the instruction, we find no ineffective assistance of counsel and overrule the sixth assignment of error.

### D. Manifest Weight of the Evidence

{¶ 39} Mosby next contends that his convictions for rape and kidnapping are against the manifest weight of the evidence.

{¶ 40} A manifest weight challenge questions whether the State met its burden of persuasion at trial. *State v. Hill*, 2013-Ohio-578, ¶ 32 (8th Dist.). To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997). When considering a claim that a conviction is against the manifest weight of the evidence, an appellate court sits as a "thirteenth juror" and may disagree with the factfinder's resolution of the conflicting testimony. *Id.* We will reverse a conviction as against the manifest weight of the evidence "'only in the exceptional case in which the evidence weighs

heavily against the conviction.'" *State v. McLoyd*, 2023-Ohio-4306, ¶ 40 (8th Dist.),

quoting *Thompkins* at 387.

{¶ 41} Mosby contends that his convictions are against the manifest weight

of the evidence because neither K.L. nor N.W. provided plausible, believable

testimony, especially because the police initially believed that K.L. willingly got into

his vehicle. He contends that he did not avoid police interrogation upon his arrest

and, in fact, immediately acknowledged that he had a sexual encounter with K.L.

because he had nothing to hide. He asserts that his testimony was "both believable

and plausible" and should have created reasonable doubt in the jurors' minds. He

also contends that the State did not produce any evidence that K.L.'s injuries were

not consistent with falling several times on the sidewalk or in the snow the evening

before the sexual encounter.

{¶ 42} Our review of the record demonstrates that Mosby's testimony was

neither plausible nor believable. First, the record does not support Mosby's

assertion that K.L. willingly got into his vehicle. Although Officer Bliss testified that

he was under the erroneous impression after talking with N.W. that K.L. willingly

got into Mosby's car, N.W.'s testimony was clear that K.L. was lying on the ground,

unable to get up and walk any further after her night at the bar and epileptic seizure

and that N.W. alone decided to trust the stranger in the SUV and accept his offer of

a ride home for both of them. K.L. testified that she was "blacked out" and did not

remember getting into the SUV. Mosby likewise admitted that K.L. was "passed out"

on the ground when he encountered her and N.W. that evening and that he and N.W. had to pick K.L. up and put her in the SUV.

{¶ 43} Furthermore, Mosby's testimony that he drove off without N.W., even though he saw her waving to him to stop, because she only asked him to take K.L. home, rather than both women, is not believable. N.W. testified that she told Mosby that both women needed a ride home but that Mosby suddenly drove off as she attempted to get in the front seat of the SUV. And Mosby admitted that he did not know K.L.'s address when he drove off with her unconscious in the back seat of his vehicle. Furthermore, N.W.'s frantic 911 call and her distraught interaction with Officer Bliss make clear that she did not intend for Mosby to drive off with K.L. alone in his vehicle.

{¶ 44} Mosby's testimony that K.L. was just "calm and chill" when she woke up in the backseat of a stranger's vehicle, without N.W., after blacking out as she left the bar to go home with her friend, also strains credulity. Likewise, his testimony that he and K.L. then "just had a conversation" for over an hour before they had consensual sex, even though, as Mosby testified, it was getting light out by then and people were walking through the parking lot where he had parked, is also not credible. Common sense and reason dictate that one would be distraught upon waking up in the backseat of a stranger's car after blacking out and would not have a calm conversation with that stranger before engaging in consensual sexual intercourse.

{¶ 45} Contrary to Mosby's testimony, K.L. testified that she repeatedly rejected Mosby's advances and fought back but he hit her with his belt and then pulled out a gun when she resisted. Nurse Becks testified that K.L.'s injuries were consistent with what K.L. told her had happened and that State's exhibit Nos. 7(A)-7(M), pictures of K.L.'s injuries taken by Becks during her examination, accurately reflected K.L.'s injuries.

{¶ 46} After weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses and resolving any conflicts in the evidence, we find that the jury did not lose its way in believing N.W. and K.L. instead of Mosby and convicting him of rape and kidnapping with a sexual motivation specification. This is not the extraordinary case in which the evidence weighs heavily against the convictions such that they should be reversed and a new trial ordered. Accordingly, the seventh assignment of error is overruled.

## E. Waiver of Jury Trial on Sexually Violent Predator Specifications

{¶ 47} Mosby next contends that his trial counsel was ineffective for advising him to waive his right to a jury trial on the sexually violent predator specifications, and further, that his waiver was not made knowingly, voluntarily, and intelligently because counsel's advice to waive was erroneous.

{¶ 48} The Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution provide that defendants in all criminal proceedings shall have the assistance of counsel for their defense. The United States Supreme Court has recognized that "the right to counsel is the right to effective

assistance of counsel." *Strickland*, 466 U.S. 668 at 686. To establish ineffective assistance of counsel, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonable performance and that he was prejudiced by that deficient performance, such that but for counsel's error, the result of the proceedings would have been different. *State v. Drummond*, 2006-Ohio-5084, ¶ 205. Failure to show either element is fatal to the claim. *State v. Anderson*, 2018-Ohio-2013, ¶ 23 (4th Dist.).

{¶ 49} Judicial scrutiny of a lawyer's performance must be highly deferential. *State v. Sallie*, 81 Ohio St.3d 673, 674 (1998). "A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland* at 689. Debatable trial tactics do not establish ineffective assistance of counsel. *State v. Conway*, 2006-Ohio-2815, ¶ 101.

{¶ 50} Mosby argues that defense counsel was incorrect in his assessment that the jury would learn about his prior bad acts if the sexually violent predator specifications were heard to the jury because no evidence surrounding the specifications would have been heard until and unless he was convicted of Count One or Count Two with the sexual motivation specification. Accordingly, he contends that defense counsel did not understand the law regarding sexually violent predator specifications and improperly advised him to waive his right to a jury trial on those specifications.

{¶ 51} Defense counsel's advice to Mosby to waive a jury trial on the sexually violent predator specifications was a trial strategy. The record reflects that Mosby waived a jury trial on the specifications in order to avoid the specifications being read to the jury when the trial court read the indictment. Defense counsel told the trial court that "[o]bviously, Your Honor, those specs don't come into consideration of the Court until there's a conviction — if and when there's a conviction — but at this time, Your Honor, we are going to enter into a waiver of that." (Tr. 5-6.) When the trial judge asked defense counsel to explain "what that means for the Defendant's sake," defense counsel stated that "the sexually violent predator specifications, if those were going to be tried to the Jury, number one, they would hear those counts at the time the Court reads the indictment to the Jury." (Tr. 6.) Defense counsel continued, stating, "[I]t's our belief, Your Honor, that there would be some indication of prior incidents with that information being read to the Jury" even though "there cannot be any evidence presented to the Jury at this time related to any prior arrests, or anything else related to the sexually violent predator specifications" because "those specifications in themselves would not come in unless there was a conviction." (Tr. 6.) Defense counsel responded affirmatively when the trial judge asked him if he thought it would be advantageous to Mosby during trial for the jury not to have heard the sexually violent predator specifications read during the reading of the indictment. (Tr. 6-7.)

{¶ 52} Thus, contrary to Mosby's argument, defense counsel fully understood that evidence surrounding the sexually violent predator specifications

would not be presented to the jury unless and until there was a conviction. Counsel wanted to waive a jury trial on the specifications, however, to avoid the jury hearing the specifications when the judge read the indictment to the jury so that they did not get any idea before deciding whether he was guilty of rape and kidnapping that Mosby had been involved in prior criminal incidents. We find this to be a trial strategy and not ineffective assistance of counsel. The ninth assignment of error is overruled.

{¶ 53} With respect to the knowing, voluntary, and intelligent nature of his jury waiver, Mosby does not argue that he did not understand the jury waiver but only that he could not have made his waiver knowingly, voluntarily, and intelligently because defense counsel did not understand the law regarding when evidence regarding sexually violent predator specifications would be presented to the jury. As discussed above, however, defense counsel understood the law and made a strategic decision to advise Mosby to waive a jury trial on the specifications to avoid having the jury hear the sexually violent predator specifications during the reading of the indictment. Because there is nothing in the record to suggest that Mosby did not understand the reason for his jury waiver and did not make that waiver knowingly, voluntarily, and intelligently, the tenth assignment of error is overruled.

## F. Trial on the Sexually Violent Predator Specifications

{¶ 54} Mosby next argues that the trial court did not offer him an opportunity to present a defense or to testify in his own defense during the sexually violent predator phase of the trial and that he was denied due process and a fair trial

because the trial court did not find that he is a sexually violent predator beyond a reasonable doubt.

{¶ 55} Mosby's argument that he was not given an opportunity to present a defense is directly refuted by the record. During the sexually violent predator phase of the trial, after Detective Rivera testified for the State regarding two prior police reports involving Mosby and the reports were admitted into evidence, the State informed the court that it had no other witnesses to present. (Tr. 906.) The trial court then stated, "Now the defense has the opportunity to present any witnesses, too, in this phase." *Id.* Defense counsel then informed the court, "We're not going to be calling any witnesses, Your Honor." *Id.* The judge then asked defense counsel, "Does the defense have any exhibits to offer? We'll take exhibits, too." (Tr. 907.) Defense counsel responded, "No, Your Honor." It is apparent from this colloquy that the court offered Mosby an opportunity to present a defense to the sexually violent predator charges.

{¶ 56} With respect to Mosby's denial of due process and fair trial argument, we note that at trial, the State must prove beyond a reasonable doubt that a sexually violent predator specification applies to the offender. *State v. Haynes*, 2002-Ohio-4389, ¶ 92 (10th Dist.); *State v. Yoder*, 2011-Ohio-4975, ¶ 48 (5th Dist.). Here, in finding Mosby to be a sexually violent predator, after evaluating the factors set forth in R.C. 2971.01(H)(1) for determining whether an offender is a sexually violent predator, the trial court found that there was "compelling" evidence adduced at trial that Mosby was likely to engage in sexually violent offenses and behavior in the

future and that the sexually violent predator specifications were supported by sufficient evidence and not against the manifest weight of the evidence. (Tr. 958.)

{¶ 57} Although the trial court did not use the words "beyond a reasonable doubt" when it found that Mosby is a sexually violent predator, in a bench trial, the court is presumed to know and apply the law correctly unless the record affirmatively demonstrates otherwise. *State v. Kilbane*, 2019-Ohio-863, ¶ 15 (8th Dist.), citing *State v. Shropshire*, 2016-Ohio-7224, ¶ 37 (8th Dist.). Mosby makes no argument whatsoever that the record demonstrates otherwise. In light of the trial court's extensive recitation of the evidence from the trial that supported its sexually violent predator finding and its review of the factors set forth in R.C. 2971.01(H)(1) for determining whether an offender is a sexually violent predator (tr. 927-958), it is apparent that the trial court found Mosby to be a sexually violent predator beyond a reasonable doubt.

{¶ 58} Moreover, defense counsel raised no objection whatsoever to the trial court's sexually violent predator finding despite a specific invitation from the judge to make a statement. (Tr. 958.) It is well settled that a party cannot raise new arguments and legal issues for the first time on appeal, and the failure to raise an issue in the trial court waives that issue for appellate purposes. *Almazan*, 2021-Ohio-1718, at ¶ 8 (8th Dist.). The eleventh assignment of error is therefore overruled.

### G. Consecutive Sentences

{¶ 59} In the twelfth assignment of error, Mosby contends that the trial court erred in imposing consecutive sentences because its findings were not clearly and convincingly supported by the record.

{¶ 60} Under R.C. 2929.14(C)(4), a trial court may impose consecutive sentences if it finds (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger he poses to the public, and (3) at least one of the following applies: (i) The offender committed one or more of the multiple offenses while awaiting trial or sentencing, while under a sanction, or while under postrelease control for a prior offense; (ii) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct; or (iii) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 61} The trial court found that consecutive sentences were necessary to protect the public from future crime and to sufficiently punish Mosby and that they were not disproportionate to the seriousness of Mosby's conduct and the danger he poses to the public. (Tr. 988-989.) The court also found that Mosby's crimes were part of a prolonged course of conduct such that a single term of imprisonment would

not adequately reflect the seriousness of his crimes and the punishment he deserves. (Tr. 989.)

{¶ 62} Mosby argues that the trial court's finding that consecutive sentences were necessary to protect the public was incorrect because if the sentences had been run concurrently, the parole board could decide after he spends ten years in prison that he still needs to stay in prison, thereby adequately protecting the public. Mosby's argument ignores the fact that if he were not sentenced to consecutive sentences, the parole board could decide to release him after ten years, which would not adequately protect the public from future crime by Mosby, especially given his sexually violent predator propensity. Mosby's argument also ignores the fact that the trial court found that consecutive sentences were necessary not only to protect the public from future crime but also to adequately punish Mosby for his crimes. Our review demonstrates that the record clearly and convincingly supports the trial court's findings and the imposition of consecutive sentences. The twelfth assignment of error is overruled.

### H. A $40,000 Fine

{¶ 63} At sentencing, the trial court told Mosby, "I do not know your financial situation at all," (tr. 990), and then imposed a $20,000 nonmandatory fine for each offense, finding that Mosby's offenses caused economic costs to the community, which had to investigate and prosecute his crimes, and that it would be expensive to keep him in prison for life. (Tr. 992.) The court found that Mosby could pay the fines through community work service during his extended prison term. *Id.*

In his thirteenth assignment of error, Mosby challenges the fines. Because he did not challenge the fines in the trial court, we review for plain error.

{¶ 64} Before imposing a financial sanction as part of a sentence, a trial court is required to "consider a defendant's present and future ability to pay the amount of the financial sanction or fine." R.C. 2929.19(B)(5). There are no express factors the court must take into consideration or findings regarding the offender's ability to pay that must be made on the record. *State v. Cotto*, 2019-Ohio-985, ¶ 12 (8th Dist.). There is also no requirement that the trial court state on the record that it affirmatively considered the defendant's present and future ability to pay a financial sanction at the time of sentencing. *State v. Petticrew*, 2023-Ohio-159, ¶ 19 (2d Dist.), citing *State v. Parker*, 2004-Ohio-1313, ¶ 42 (2d Dist.). Nevertheless, the record should contain evidence that the trial court considered the defendant's present and future ability to pay before imposing the financial sanction. *Petticrew* at *id*. For example, where the trial court reviews a presentence-investigation report that contains information about the defendant's age, health, education, and work history, it can be inferred that the court considered the defendant's present and future ability to pay the fine. *State v. Clemons*, 2015-Ohio-520, ¶ 10 (8th Dist.); *State v. Willis*, 2012-Ohio-294, ¶ 4 (2d Dist.).

{¶ 65} Although the trial court specifically considered Mosby's future ability to pay the fines, noting that he can work them off through community work service while incarcerated, the record contains no evidence from which we can infer that the trial court considered Mosby's present ability to pay the fines. Indeed, the trial court

stated that it knew "nothing" about Mosby's financial situation. The fact that the trial court had previously found Mosby indigent and entitled to representation by court-appointed counsel is not determinative of any subsequent finding regarding his ability to pay a fine. *Cotto*, 2019-Ohio-985, at ¶ 10 (8th Dist.). And Mosby's testimony that he had two jobs when he was arrested is not dispositive; the trial court's statement that it knew "nothing" about Mosby's financial situation indicates that it did not consider this information before imposing the fines.

{¶ 66} Because the record demonstrates that the trial court did not consider Mosby's present ability to pay the fines, as required by R.C. 2929.19(B)(5), we find that the trial court committed plain error. The imposition of the fines is reversed, and the matter is remanded for a limited resentencing hearing at which the trial court shall consider Mosby's present ability to pay any fines it may impose. The thirteenth assignment of error is sustained.

### I. Alleged Bias of the Trial Court Judge

{¶ 67} In his fourth assignment of error, Mosby contends that the trial judge was biased against him, thereby creating structural error that requires reversal of his convictions.

{¶ 68} "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955); *accord Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876 (2009). Fairness "requires the absence of actual bias in the trial of cases" and "a system of law [that] endeavor[s] to prevent even that probability of unfairness." *Murchison* at *id.* Thus, "a criminal trial before a biased

judge is fundamentally unfair and denies a defendant due process of law." *State v. LaMar*, 2002-Ohio-2128, ¶ 34.

{¶ 69} A structural error is a violation of the basic constitutional guarantees that define the framework of a criminal trial and when an objection has been raised in the trial court, it is grounds for automatic reversal. *State v. Jones*, 2020-Ohio-3051, ¶ 2. But when the accused fails to object to the error in the trial court, appellate courts apply the plain-error standard of review, shifting the burden to the accused to demonstrate that the error affected the trial's outcome. *State v. West*, 2022-Ohio-1556, ¶ 2, citing *Jones* at ¶ 17.

{¶ 70} Mosby objects to various comments and rulings by the judge that he contends demonstrate judicial bias and, therefore, structural error. But he did not object to any of the allegedly biased comments or rulings in the trial court.[2] Accordingly, our review is for plain error only. *West* at ¶ 28. To qualify for plain-error relief, Mosby must establish that (1) an error occurred, (2) the error was plain, and (3) the error affected his substantial rights. *State v. Morgan*, 2017-Ohio-7565, ¶ 36. In short, he must demonstrate a reasonable probability that the error resulted in prejudice. *State v. Rogers*, 2015-Ohio-2459, ¶ 22.

{¶ 71} Mosby first contends that the trial judge referred to K.L. as a victim on the record 46 times. He fails to mention, however, that all 46 of these references

---

[2] Nor did he avail himself of the procedures described in R.C. 2701.13, which allows a party to file an affidavit of bias and prejudice with the Ohio Supreme Court seeking disqualification of a biased judge.

were made outside the presence of the jury and thus could not have prejudiced him with the jury. He also complains about the judge's four references to K.L. as a victim that were made in front of the jury. As discussed in our analysis of the third assignment of error, however, Mosby was not prejudiced by the trial court's use of the term "victim" four times in front of the jury and there was no plain error requiring reversal and a new trial.

{¶ 72} Mosby next contends that the trial court demonstrated bias when it halted defense counsel's cross-examination of K.L. "to belittle and degrade him." As discussed above in our analysis of the first assignment of error, there is nothing in the record to suggest that the trial judge interrupted the cross-examination for any reason other than to properly instruct defense counsel to "stick with the evidence" in his cross-examination.

{¶ 73} Mosby next contends that the trial judge "oddly" interrupted defense counsel's cross-examination of Nurse Becks and then "proceeded to lecture" defense counsel and make snide comments to him. Our review of the record reveals neither a lecture nor snide comments. At the sidebar conference, the judge explained that he stopped Becks's cross-examination because defense counsel was starting to ask Becks about statements made by K.L. and N.W. at the hospital about walking home from the bar and the judge "was wary" that defense counsel was going to ask about whether K.L. willingly got into Mosby's SUV, as counsel had suggested in K.L.'s cross-examination. (Tr. 525.) The judge then explained in detail the reasons for his admonition to counsel the day before during K.L.'s cross-examination and explained

that he did not give a detailed explanation the day before because it was late in the day and it was apparent the witnesses wanted to finish and go home. (Tr. 515.) The record demonstrates that the judge was not finished with his explanation of the reasons for his admonition regarding K.L.'s cross-examination when defense counsel interrupted and asked if he could respond to the judge's comments. Thus, the judge's statement that defense counsel could respond when he was finished was not inappropriate and did not demonstrate bias against Mosby. (Tr. 516.)

{¶ 74} Next, Mosby contends that the trial judge was biased because he "openly encouraged" the State to impeach him with prior convictions that were not impeachable offenses. Mosby again misrepresents the record, which reflects that the judge brought the prosecutor and defense counsel to sidebar to "hammer out" any issues regarding Mosby's cross-examination before the prosecutor began his cross-examination. (Tr. 649.) The judge began by asking about Mosby's prior criminal record and then stated that based on a record the judge had in front of him, the judge thought that Mosby had been sentenced to prison for six months in 2004. (Tr. 650.) When the prosecutor explained that Mosby had been sentenced to six months in county jail for a probation violation and there was nothing in his record to use for impeachment, the judge confirmed that the State was not going to probe Mosby's criminal history on cross-examination. (Tr. 653.) After confirming there were no other issues to discuss regarding Mosby's cross-examination, the judge ended the sidebar and called the jury back in. *Id.* We find nothing in the record to suggest that the judge was encouraging the State to impeach Mosby with non-

impeachable offenses; rather, the trial judge's intent was to address before cross-examination any issues that might arise during the State's cross-examination of Mosby. This demonstrates thoroughness, not judicial bias.

{¶ 75} Mosby next contends that the trial judge "belittled" defense counsel during the sexually violent predator phase of the trial during a discussion between the judge and counsel regarding whether in making its sexually violent predator determination the judge is limited to considering only the evidence presented during the sexually violent predator hearing or can also consider anything it learned during the trial on the underlying charges, including information about Mosby's prior criminal record that the judge was aware of but the jury did not hear. (Tr. 896-898.) Our review demonstrates that the judge asked defense counsel whether he had any case law or a statute to support his contention that the court was limited to considering only the evidence it heard during the underlying trial or the sexually violent predator specification trial. The exchange admittedly became contentious when counsel repeatedly made other arguments in response to the judge's question but did not answer the question with a "yes" or "no" answer. (Tr. 898-906.) We do not find the judge's exasperation with defense counsel's failure to answer his question to be indicative of bias against Mosby. Furthermore, the record reflects that in finding Mosby to be a sexually violent predator, the trial court considered only the evidence it heard in the underlying trial and did not consider any of Mosby's prior offenses. (Tr. 930-931.) Accordingly, Mosby cannot demonstrate that he was prejudiced by the exchange between the judge and defense counsel.

{¶ 76} Next, Mosby contests the court's finding that he is a sexually violent predator, raising the same arguments that we already considered and rejected in the eleventh assignment of error. Mosby's repeated assertion that the trial judge was biased because it did not allow him to present a defense in this phase of the trial is particularly brazen because the record so clearly reflects that defense counsel specifically told the trial judge that Mosby had no witnesses nor evidence to present in the sexually violent predator hearing.

{¶ 77} Mosby next contends that the trial judge was biased because during sentencing, he noted that DNA evidence offered by a forensic scientist from the Cuyahoga County Regional Forensic Science Laboratory during trial corroborated K.L.'s testimony. Mosby contends that the DNA evidence was meaningless in light of his admission that he had sex with K.L. We fail to appreciate, and Mosby does not explain, how the judge's comment could have prejudiced Mosby, which he must show to prevail on his claim of judicial bias. When the judge made his comment, the jury had already found him guilty of rape and kidnapping, and Mosby offers nothing whatsoever to demonstrate that the judge's comment somehow affected the trial court's finding that he is a sexually violent predator or his sentence.

{¶ 78} Mosby also contends the trial court's statements at sentencing that he confessed to kidnapping K.L. and urging the parole board to never release him were indicative of bias. Again, we find no prejudice because the comments were made at sentencing, after the jury had found Mosby guilty of rape and kidnapping, and

Mosby makes no argument that the comments somehow affected the trial court's sexually violent predator finding or his sentence.

{¶ 79} Mosby next contends that the trial court was biased because it told counsel that the jury instructions were "standard OJI," when they were not, which resulted in the jury instruction that Mosby objects to in his fifth assignment of error. As discussed above, the instruction is a standard instruction in Ohio and thus, the judge's comment when it distributed proposed jury instructions to the parties was not error. Furthermore, Mosby's assertion that the trial judge's comment misrepresented the jury instructions and thereby prejudiced him is belied by the record, which clearly reflects that the trial court gave defense counsel many opportunities to challenge the jury instructions. The judge distributed proposed jury instructions to the prosecutor and defense counsel even before trial testimony began and instructed them that "now is the time to work on them" so they could "give input" on them. (Tr. 267.) At the close of the State's case, the judge asked the prosecutor and defense counsel if they had any issues regarding the charge and the parties discussed a few changes. (Tr. 610.) Then, before the State's closing argument, the judge gave the prosecutor and defense counsel the final jury charge and asked them to review it. The judge told them that "if you have any problems, we'll straighten the issue out." (Tr. 720.) Later, before final arguments began, the judge noted that neither party had requested any changes to the instructions. (Tr. 729.) Thus, it is clear that Mosby had ample opportunity to discover whether the

objected-to instruction was not standard (which it is) and to object to it, which he did not do.

{¶ 80} Mosby next contends that the trial court's imposition of a $20,000 fine on each count was error and thus demonstrative of bias. As discussed above, the trial court failed to consider Mosby's present ability to pay the fines, as required by R.C. 2929.19(B)(5), before imposing them. This failure is a legal error; it is not indicative of any bias toward Mosby.

{¶ 81} None of the comments or rulings cited by Mosby demonstrate that the judge was biased against him and that he was prejudiced thereby. Accordingly, the fourth assignment of error is overruled.

### J. Cumulative-Error Doctrine

{¶ 82} In the eighth assignment of error, Mosby contends that the cumulative effect of the multiple errors at trial deprived him of a fair trial and due process, warranting reversal of his convictions and a new trial.

{¶ 83} "Under the doctrine of cumulative error, 'a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial-court error does not individually constitute cause for reversal.'" *State v. McKelton*, 2016-Ohio-5735, ¶ 321, quoting *State v. Powell*, 2012-Ohio-2577, ¶ 223.

{¶ 84} The cumulative-error doctrine does not apply in this case because there were not multiple trial court errors. There was one error at sentencing regarding the imposition of fines, and we are reversing the fines and remanding for

a resentencing hearing so that error can be corrected. The eighth assignment of error is overruled.

{¶ 85} Affirmed in part, reversed in part, and remanded.

It is ordered that the parties share equally the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for a limited resentencing hearing and execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, ADMINISTRATIVE JUDGE

EILEEN T. GALLAGHER, J., and
SEAN C. GALLAGHER, J., CONCUR